

RECEIVED
IN LAFAYETTE, LA

JAN 11 2002

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

FILED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 3-21-02
BY _____

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| BEVERLY COLE, ANITA S. PERKINS and JEWELL P. LOWE, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | * * * * | CIVIL ACTION |
| Plaintiffs, | * | NO. 01-0123 |
| | * | SECTION "L-O" |
| VERSUS | * | |
| | * | JUDGE HAIK |
| GENERAL MOTORS CORPORATION, | * * | MAGISTRATE JUDGE METHVIN |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# CLASS CERTIFICATION BRIEF
# FILED ON BEHALF OF PLAINTIFFS



**RECEIVED**

JAN 1 1 2002

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| BEVERLY COLE, ANITA S. PERKINS | * | CIVIL ACTION |
| and JEWELL P. LOWE, INDIVIDUALLY, | * | |
| AND ON BEHALF OF ALL OTHERS | * | |
| SIMILARLY SITUATED, | * | NO. 01-0123 |
| Plaintiffs, | * | |
| | * | SECTION "L-O" |
| VERSUS | * | |
| | * | JUDGE HAIK |
| | * | |
| GENERAL MOTORS CORPORATION, | * | MAGISTRATE JUDGE METHVIN |
| | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**CLASS CERTIFICATION BRIEF
FILED ON BEHALF OF PLAINTIFFS**

MAY IT PLEASE THE COURT:

This brief is submitted by plaintiffs, BEVERLY COLE, ANITA S. PERKINS, and JEWELL P. LOWE, individually, and on behalf of all others similarly situated, in support of their amended motion for class certification in accord with the order issued by this Honorable Court on January 2, 2002. Attached hereto is the Affidavit of Luke F. Piontek which references the exhibits attached to this brief. Since there will be no oral argument on the Motion for Class Certification, Plaintiffs' respectfully submit that these exhibits be accepted into evidence.

1

## I.    **BACKGROUND**

Defendant herein, General Motors Corporation (herein "GM"), is in the business of designing, manufacturing, distributing, marketing, and selling premium luxury automobiles, which it markets throughout the United States, including Louisiana, under various trade names. One such model automobile was sold under the name Cadillac DeVille in the model years 1998 and 1999. Both the 1998 and 1999 model year Cadillac DeVille automobiles were manufactured with standard side impact air bag systems which included Side Impact Sensing Modules ("SISM") to effect deployment when necessary.  These side impact air bag systems were touted by GM as an added safety feature.  But, the SISMs are defective and GM failed to repair the 1998 and 1999 Cadillac DeVilles within a reasonable time in violation of its warranty obligations. *See* Exhibit "A," recall notification letter, a copy of which is attached hereto.

Beverly Cole, Anita S. Perkins and Jewell P. Lowe ("Plaintiffs") purchased model year 1998 and/or 1999 Cadillac DeVilles designed and manufactured by GM containing side impact air bags which also included 1998-1999 vintage SISMs.  Plaintiffs bring this action on behalf of themselves, individually, and on behalf of all others similarly situated, as representatives of the class of all persons and legal entities who have acquired, whether by purchase, lease, donation or otherwise (hereinafter "Acquirers"), anywhere in the United States, 1998 or 1999 Cadillac DeVilles equipped with side impact air bag systems and SISMs.

GM has suggested that the proposed class definition is not sufficient because it is unclear who is meant to be included and excluded.  For the most part, the alleged deficiencies identified by GM relate to scenarios that are either irrelevant or immaterial to this case.  Moreover, to the extent the Court believes further clarification is necessary, it has discretion to amend the proposed class definition to cure any alleged deficiencies.  But, in order to avoid any confusion,

2

Plaintiffs will clarify the proposed class definition.  While the proposed class includes both purchasers and lessees, it does not include commercial lessors.  Similarly, the proposed class does not include any commercial dealers for resale who may have acquired the subject vehicles via trade-in or otherwise.  It is evident from Plaintiffs' damage model discussed later in this brief that these entities would have no damages and do not need to be included in the class.

The class does include subsequent purchasers of 1998 or 1999 Cadillac DeVilles.  GM also breached warranties to these purchasers.  As discussed below, Plaintiffs' damage model readily accommodates subsequent purchasers and eliminates potential double recovery on any individual vehicle.

GM also criticizes the proposed class because it includes claimants who acquired their vehicles after announcement of the recall.  According to GM, it may have a defense to any claim by someone acquiring the vehicle with knowledge of the recall.  Regardless of whether GM is correct, class certification remains appropriate.  As discussed in greater detail below, the proper procedure is to include these claimants in the class and use the post-certification claims procedure to determine whether they are entitled to collect.  At worst, the Court could simply define the class so as to exclude anyone acquiring after announcement of the recall in September 2000.[1]

The exclusions proposed by Plaintiffs are intended to streamline the case by eliminating potentially divisive issues from the class certification analysis.  Therefore, anyone executing a release in favor of GM pertaining to the claims raised herein prior to institution of this litigation

---

[1]The class certified in the Ford/Firestone litigation was defined in this way.

3

has been excluded. Similarly, anyone seeking to assert a claim against GM for personal injury as a result of an inadvertent deployment of a side impact air bag has been excluded.

In fact, the only theory of damages being advanced by Plaintiffs is "benefit-of-the-bargain" damages for breach of express and/or implied warranties by GM. Plaintiffs <u>do</u> <u>not</u> seek: any tort based damages; property damage, diminished re-sale value, or other consequential damages; or punitive damages. To the extent the current pleadings are inconsistent with the foregoing (as GM has suggested), Plaintiffs stand ready to make any amendment deemed necessary by the Court. As discussed below, any putative class member who wishes to pursue additional claims is free to opt out.

The facts supporting Plaintiffs' benefit-of-the-bargain claims are straight forward and uniform across the proposed class:

1.  GM manufactured over 200,000 1998 and 1999 Cadillac DeVilles. (GM Answer to Interrogatory No. 18, a copy of which is attached hereto as Exhibit "B.")

2.  Each such vehicle was manufactured at its plant in Hamtramck, Michigan. (Kolhoff Depo., at p. 111, a copy of which is attached hereto as Exhibit "C.")

3.  Each such vehicle contained as standard equipment a side impact air bag system containing two SISMs intended to deploy its respective side air bag in the event of a collision.

4.  All of the SISMs were manufactured by Delco Electronics Division of Delphi Corporation. (GM Answer to Interrogatory No. 5, a copy of which is attached hereto as Exhibit "B.")

4

5.   These SISMs were not used in any other vehicles.   (Kolhoff Depo., Exhibit "C," at p. 138).

6.   GM began to receive reports of inadvertent deployment of side air bags in 1998 DeVilles, and began to investigate possible problems with the SISMs in those vehicles as early as March of 1998.   (Kolhoff Depo., at pp. 75-76, attached hereto as Exhibit "C.")

7.   Following its investigation, GM decided on July 28, 2000 that the SISMs were defective and that it would initiate a recall of 1998 and 1999 Cadillac DeVilles.   (Sonye Depo., at p. 117, a copy of which is attached hereto as Exhibit "D.")

8.   In September of 2000, GM notified each owner/lessee that "General Motors has decided that a defect which relates to motor vehicle safety exists and may manifest itself in your 1998 or 1999 model year Cadillac DeVille."   (Notification letter, Exhibit 21 to Sonye Depo.; *See also*: Exhibit "A," hereto.)

9.   GM's notice further provided that it had "learned of a condition that can cause the side impact air bags in your car to deploy unexpectedly, without a crash, as you start your car or during normal driving."   (Notification letter, Exhibit 21 to Sonye Depo.; *See also*:  Exhibit "A," hereto.)

10.   The notice instructed each owner/lessee to await further communications from GM before bringing their vehicles in for repairs.

11.   GM provided an express warranty with each 1998 and 1999 Cadillac DeVille promising "to correct any vehicle defect related to materials or

5

workmanship" for four years or 50,000 miles, and that such action would take place within a "reasonable time." (1998 Warranty Book, Bates Nos. P-0008 to P-0023, copies of which are attached hereto as Exhibit "E," and 1999 Warranty Book, Bates Nos. P-0498 to P-0529, copies of which are attached hereto as Exhibit "F.")

12.   GM's written warranty also indicates that it is "provided to the original and any subsequent owners of the vehicle." (*Id.*)

13.   The owner's manual provided by GM with each 1998 and 1999 Cadillac DeVille also contained a representation that the side air bags were designed to inflate only in "moderate to severe crashes involving a front door." (1998 Owner's Manual, GM Bates Nos. 000022 - 23, copies of which are attached hereto as Exhibit "G," and 1999 Owner's Manual, GM Bates Nos.000217 – 218, copies of which are attached hereto as Exhibit "H.")

14.   GM does not distinguish between sales and leases and extends its express warranty on Cadillac DeVilles to lessees as well (Sonye Depo., Exhibit "D," at pp. 12-13)

15.   GM did not begin to notify owners/lessees to bring their vehicles in for replacement of the SISMs until May 2001. (Sonye Depo., Exhibit "D," at p. 163)

16.   This recall letter once again advised each vehicle owner/lessee that GM "has decided that a defect which relates to motor vehicle safety exists in all 1998 or 1999 model year Cadillac DeVille model vehicles." (*See*

Affidavit of Anita S. Perkins, attached hereto as Exhibit "I," and the
September 2001 recall letter to Anita Perkins attached thereto as Exhibit
"A" to Affidavit of Anita S. Perkins.).

Based upon these core facts, Plaintiffs contend that every SISM in every 1998 and 1999
Cadillac DeVille was defective at the time of the original sale or lease of those vehicles and that
GM breached its warranty obligation to correct the defect within a "reasonable time."   GM
apparently intends to try to take back its admission in the notice and recall letters sent to DeVille
owners that every vehicle was defective.   However, such a contention by GM does not affect
class certification.   The defect issue will necessarily be decided on the basis of class-wide proof.

Plaintiffs contend that GM is estopped from denying that all 1998 and 1999 DeVilles are
defective by reason of its admissions to vehicle owners.   (*See*  "A," Exhibit "A" to the Affidavit
of Anita S. Perkins, Exhibit "I," and the April 2001, Campaign bulletin, a copy of which is
attached as Exhibit "J.")   *See also*:   GM-National Highway Traffic Safety Administration
("NHTSA") correspondence, copies of which are attached hereto, as Exhibit "K," in globo.   In
addition, GM has admitted in deposition that the very reason all of the 1998 and 1999 DeVilles
are subject to the recall is that:   (1) the quality control at the plant making the SISMs was so
uneven that even GM was incapable of identifying which units were most likely to fail; and (2)
there is no way to inspect a SISM installed in a vehicle without destroying it.   (Sonye Depo.,
Exhibit "D," at pp. 49-54 and Kolhoff Depo., Exhibit "C," at pp. 59-63).   Plaintiffs contend that
these facts confirm that all of the vehicles are defective for purposes of their warranty claims.
There can be no individualized proof on the issue of defect.   GM, in essence, argues that a
vehicle is not defective unless it has had a deployment, while Plaintiffs maintain that they were
all defective at the moment of sale, as is revealed by GM's admissions.

7

Likewise, the issue of damages will be resolved on the basis of class-wide proof. Plaintiffs seek benefit-of-the-bargain damages. GM promised to deliver vehicles free from defect, but instead delivered or caused to be delivered vehicles containing defective SISMs. As a result, Plaintiffs were deprived of the full benefit of this bargain, and are entitled to recover the difference in value between what they were promised and what they received. The Fifth Circuit provided an excellent analysis of the benefit-of-the-bargain theory of recovery recently in Coghlan v. Wellcraft Marine, 240 F.3d 449 (5th Cir. 2001).

Plaintiffs have proposed a damage model that will allow for the ready calculation of each class member's damages based upon readily-available information. Starting with the premise that Plaintiffs were promised a side air bag system free from defect and, instead, received a defective one, benefit-of-the-bargain damages would equal the full cost of that system. However, since GM has promised to deliver what it was originally obligated to, albeit late, by replacing the defective SISMs, Plaintiffs felt that some credit was due GM. Accordingly, the model proposed by Plaintiffs' economist, Dennis Giuffre, seeks to assign a value to that amount of time GM failed to deliver a defect free system, e.g. was in breach of its warranty obligations. The report of Mr. Giuffre is attached hereto as Exhibit "L." Simply stated, the model determines how much a vehicle depreciated from the time it was acquired until the time it is ultimately repaired and determines the fractional amount of that depreciation that represents the air bag system to arrive at a damage figure. Although GM nit-picks at the assumed values used by Mr. Giuffre in his report, the fact remains that relatively little information is needed to perform this type of analysis. Even if, as GM contends, purchase prices are not readily available from public sources, this information can be obtained from class members through a claims procedure.

8

Several services such as Edmunds, Kelley Blue Book, and NADA Price Guides can be used to provide vehicle values at the time of repair. *See* Opinion of Nolan J. Broussard, Jr., at p. 2, a copy of which is attached hereto as Exhibit "M." Even if, as GM contends, it is incapable of determining the "cost" of the air bag systems in its cars, the fact finder can determine what portion of the overall depreciation represents the air bag system. This factor will not be different for each car, and only need be calculated once for the class as a whole.

On the other hand, GM's expert witness, Sharif Farhat has attempted to examine resale values of Cadillac DeVilles after the recall was announced by GM in September 2000. Plaintiffs deposed Mr. Farhat on January 9, 2002 and the final, signed transcript of that deposition is not yet available. Plaintiffs will supplement this brief with a copy of the final transcript when it becomes available.[2] Mr. Farhat is not an economist; he is not an engineer; and he is not an accountant. Mr. Farhat admitted in his deposition that he did not study the purchase prices of the subject vehicles or the value of the air bag systems therein. He testified that he did not calculate or study the benefit-of-the-bargain damages that Plaintiffs are seeking in this suit. In fact, Mr. Farhat admitted that he does not know how to calculate the benefit-of-the-bargain damages.[3] It is clear that Plaintiffs have offered an objective and well-accepted method for calculating damages for each class member in a mathematical fashion; a method which the defendant is unprepared to refute.

---

[2] Plaintiffs attach hereto as Exhibit "N," the draft version of the transcript of Mr. Farhat's deposition, received via email from the court reporter.
[3] *See* Farhat Depo., Exhibit "N," attached hereto at pp. 6-20 and 25.

9

It can generally be anticipated that GM will try to cloud the class certification issue by reference to irrelevant and/or immaterial differences between the putative class members or their claims.  This approach was flatly rejected by Judge Barker in her December 31, 2001 opinion in In re:  Bridgestone/Firestone Tires Products Liability Litigation, IP 00-9373-C-B/S, MDL No. 1373, (S.D. In. 2001), the "Certification Order."  A copy of the slip opinion is attached hereto as Exhibit "O."  In a far more complex case than the instance action, Judge Barker rejected the very same arguments GM now seeks to raise, in certifying a nationwide class on breach of express and implied warranty claims as well as others under the same Uniform Commercial Code provisions Plaintiffs seek to use here.  If a nationwide class is proper in a case involving multiple products from different manufacturers manufactured at different plants over a time span of several years, it is clearly proper here where only one product from one manufacturer over a two year period is at issue.

For the reasons set forth below, this case should be certified as prayed for by Plaintiffs.

## II.    THE CLASS ACTION

The class action serves an important role in our system of civil justice.  Gulf Oil v. Bernard, 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693 (1981).  Class actions prevent the duplication of proceedings and allow injured parties to combine their resources to obtain competent, knowledgeable and skillful representation that many of such injured parties would not be able to afford individually.

With respect to the responsible party, class actions are often the only means for assuring that a corporation which may have harmed many people will not benefit from its wrongful conduct.  "To permit the defendants to contest liability with each claimant in a single, separate suit, would, in many cases give defendants an advantage which would be almost equivalent to

closing the door of justice to all small claimants.  This is what we think the class suit practice was to prevent."  Roper  v. Consurve, Inc., 578 F.2d 1106, 1114-1116 (5th Cir. 1978), *aff'd on other grounds, sub nom.* Deposit Guaranty Nat'l. Bank v. Roper, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed2d 427 (1980); citing Hohmann v. Packard Instrument, 399 F.2d 711, 715 (7th Cir. 1968); Weeks v. Bareco Oil Company, 125 F.2d 84, 90 (7th Cir. 1941).

The class action was not designed simply to hold wrongdoers accountable, but also as a means of achieving economies of time, effort, and expense, for both litigants and the courts. Sterling v. Velsicol Chemicals, 855 F.2d 1188, 1196-1197 (6th Cir. 1988); In re:  "Agent Orange" Products Liability Litigation, 597 F.Supp. 740, 841-842 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2nd Cir. 1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988). Finally, class actions insure consistent results in litigation as opposed to the many varying outcomes that would result from many individual suits.

Therefore, the class action is a favored procedural device.  With that in mind, any doubt regarding whether a class should be certified should be resolved in favor of certification.  In re: Lease Oil Antitrust Litigation, 186 F.R.D. 403, 419 (S.D. Tex. 1999).[4]

All of the Plaintiffs' factual allegations should be accepted as true, and the court should not consider the merits of Plaintiffs' claims in determining whether class certification is appropriate. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-178, 94 S.Ct. 2140, 2152-2153, 40 L.Ed.2d 732 (1974); Caridad v. Metro-North, 191 F.3d 283, 291 (2nd Cir. 1999); Sirota v.

---

[4] *See also*:  In re:  Potash Anti-Trust Litigation, 159 F.R.D. 682, 688-689 (D. Minn. 1995); In re: South Central States Bakery Litigation, 86 F.R.D. 407, 423 (M.D. La. 1980); Kahan v. Rosenstiel, 424 F.2d 161, 169 (3rd Cir. 1970); Eisen v. Carlisle & Jaquelin, 391 F.2d 555, 563 (2nd Cir. 1968); Walsh v. Northrop Grumman, 162 F.R.D. 440, 444 (S.D.N.Y. 1995); Cruz v. Robert Abbey, 778 F.Supp. 605, 612 (E.D.N.Y. 1991); Sharif v. New York State Education Dept., 127 F.R.D. 84, 87 (S.D.N.Y. 1989); Newberg, § 24.73 (3rd ed. 1992) (Rule 23 should be liberally construed); Newberg, § 24.74 (2nd ed. 1985); 7A WRIGHT, MILLER and KANE, Federal Practice and Procedure § 1780 (1995).

Solitron Devices, 673 F.2d 566, 570-572 (2nd Cir. 1982); Miller v. Mackey International, 452

F.2d 424, 429 (5th Cir. 1971).

      Much discretion is granted to the trial court in deciding whether to certify a proposed

class. Mullen v. Treasure Chest Casino, L.L.C., 186 F.3d 620, 624 (5th Cir. 1999), *cert. denied*,

528 U.S. 1159, 120 S.Ct. 1169, 145 L.Ed.2d 1078 (2000); citing Montelongo  v. Meese, 803

F.2d 1341, 1351 (5th Cir. 1986).  A decision to certify is reversible only upon a showing of abuse

of discretion.  Mullen, 186 F.3d at 624; citing Jenkins v. Raymark Industries, Inc., 782 F.2d 468,

471-72 (5th Cir. 1986).

      As will be shown below, class certification in the case at bar is imminently appropriate.

This is not a "sprawling" mass tort class action where multiple defendants, choice of law issues,

and/or individual issues on the part of the Plaintiffs, such as reliance, causation and damages,

might render certification inappropriate.  *See* Amchem Prods., Inc. v. Windsor, 521 U.S. 591,

117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) and Castano v. Am. Tobacco Co., 84 F.3d 734 (5th Cir.

1996).

      To the contrary, in the instant case, GM is a single defendant, liable to each class member

for a single defect in the side impact air bag system of each 1998 and 1999 Cadillac DeVille,

under well-recognized legal principles of contract law which are uniform throughout the United

States.  The class can be easily defined and notified through computer and other records kept by

the defendant, as well as others, which will also assist this Court in efficiently allocating and

distributing damages on a class-wide basis.[5]   This case is the very type of case for which class

action procedure was created.

---

[5] Allison v. Citgo Petroleum Corp., 151 F.3d 402 (5th Cir. 1998) (relief can be awarded without requiring a specific
or time-consuming inquiry into the varying circumstances and merits of each member's individual case); *See also*:
Newberg, §4.26 (3rd ed. 1992); Windham v. American Brands, 565 F.2d 59, 68 (4th Cir. 1977), *cert. denied*, 435
U.S. 968 (1978) ("In cases where the fact of injury and damages breaks down into what may be characterized as

III.    **PLAINTIFFS' PROPOSED CLASS AND PROPOSED TRIAL PLAN**

A.    **PROPOSED CLASS**

Plaintiffs move to certify the following class:
All persons and legal entities who have acquired, whether by purchase, lease, donation or otherwise (hereinafter "Acquirers"), anywhere in the United States, 1998 or 1999 Cadillac DeVilles equipped with side impact air bag systems and side impact sensing modules. *Excluded* from the class are all Acquirers who sustained bodily injury or death as the result of the unexpected or premature deployment of a side impact air bag; all persons who executed, before October 26, 2000, a release in favor of General Motors Corporation ("GM"), on account of an unexpected or premature deployment of a side impact air bag; counsel for GM; and counsel for plaintiffs and the class.
Plaintiffs' Amended Motion for Class Certification at pp. 3-4.

This proceeding is a Rule 23(b)(3) "opt-out class action." An "opt-out" class definition should identify the persons who will be entitled to relief in the event of a judgment for the class representative, who will be bound by the final judgment unless they opt out, and who are entitled to notice. To do so, a class definition should be 'precise, objective, and presently ascertainable.' Shaw v. Toshiba America Information Systems, Inc., 91 F.Supp.2d 942, 953 (E.D. Tex. 2000); citing, Manual for Complex Litigation, (Third) § 30.14 (1995).

In Shaw, *supra,* the "Settlement Class" was defined as all persons who were United States citizens or residents and who owned or leased a Toshiba Laptop Computer of any model and, with respect to leased computers, the class member's remedies were to be determined by the lease agreement between lessor and lessee, to be established by a certification of ownership on a

---

'virtually a mechanical task,' 'capable of mathematical or formula calculation,' the existence of individual claims for damages seems to offer no barrier to class certification on grounds of manageability"); Roper v. Consurve, 578 F.2d at 1115 (damages in credit card case could be calculated mathematically from bank's own computer system); Chisholm v. TranSouth, 184 F.R.D. 556, 566-567 (E.D. Va. 1999) (damages subject to mechanical calculation in RICO suit based on repossession scheme); In re: Potash Anti-Trust Litigation, 159 F.R.D. at 697-698 (three potential models submitted by plaintiff were sufficient for certification phase of price-fixing class action); Coleman v. Cannon Oil Co., 141 F.R.D. 516, 527-528 (M.D. Ala. 1992) (damage formula could be applied in price-fixing case); Brown v. Cameron-Brown, 92 F.R.D. 32, 48 (E.D. Va. 1981) (damage formula could be employed in claim for unlawful retention of interest on escrow accounts); Partain v. First National Bank of Montgomery, 59 F.R.D. 56, 59 (M.D. Ala. 1973) (damages in credit card case could be calculated mathematically from bank's own computer system).

13

claim form. <u>Shaw</u>, 91 F.Supp.2d at 953. The Court in <u>Shaw</u> found that the class definition "serves all of the purposes identified in the <u>Manual For Complex Litigation</u>, (Third)." *Id.* Although <u>Shaw</u> involved certification of a settlement class, the United States Supreme Court has held that, "except for manageability, the requirements for certifying trial classes and settlement classes are the same." *Id.*, at 952; citing, <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

The proposed class in this proceeding meets all of the requirements identified in the <u>Manual For Complex Litigation</u>, (Third) as did the definition in <u>Shaw</u>, *supra*. The definition identifies the persons (Acquirers) who will be entitled to relief in the event of a judgment for the class representatives, who will be bound by final judgment unless they opt out, and who are entitled to notice. Also, the definition is not contingent upon any issues of ultimate liability. GM has access to records by which the original and current owners and lessees of the 1998 and 1999 Cadillac Devilles may be identified. Sonye Depo., Exhibit "D" at pp. 36-40 and 59-61. Thus, the Plaintiffs' proposed class definition is also precise, objective and presently ascertainable. *See*: Report of Edward F. Sherman, at pp. 2-3, a copy of which is attached hereto as Exhibit "P."

The exact number of class members is unknown at present but is reasonably believed to exceed 200,000. The claims of Beverly Cole, Anita S. Perkins and Jewell P. Lowe are typical of the claims of the class. The affidavits of Beverly Cole, Anita S. Perkins and Jewell P. Lowe are attached hereto as Exhibits "Q," "I," and "R," respectively. Further, copies of the transcripts of the depositions of Beverly Cole, Anita S. Perkins and Jewell P. Lowe are attached hereto as Exhibits "S," "T," and "U," respectively. These exhibits clearly reveal that the Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs are committed to the vigorous

prosecution of this action and have retained competent counsel who are experienced in complex litigation. Plaintiffs, therefore, should be designated and appointed as the class representatives of the proposed class and counsel for the Plaintiffs should be designated and appointed as counsel for the proposed class.

### B.   TRIAL PLAN FOR PROSECUTION OF THIS CLASS

Plaintiffs suggest that a rather simplistic trial plan can be fashioned to control the trial of this litigation. Although Plaintiffs are asserting that the substantive law of the 51 involved jurisdictions be applied to the claims in this matter, those laws are virtually the same. Issues such as privity, reliance and statutes of limitation are not significant and do not preclude predominance or manageability. Thus, those issues do not mandate a complex trial plan, either. Of course, if this Court adopts the Plaintiffs' alternative suggestion that the law of Michigan should be applied to the claims of the class members of every state except Louisiana, and that a sub-class should be formed consisting of class members residing in Louisiana to which Louisiana law would be applied, neither should that decision require a complex trial plan. In the case of the Plaintiffs' alternative suggestion, simple jury instructions could be devised - - one set according to Michigan law and another according to Louisiana law. The same jury could easily manage a liability trial using the laws of two states.

Plaintiffs suggest that the trial of this matter be divided into two phases. Phase I would entail a jury trial of GM's liability on the express and implied warranty claims and would decide the Common Issues of fact and law, listed in Section IV(A)(2) of this brief.[6] Phase II would involve a claims process whereby class members would submit claim forms approved by this Court detailing simple facts such as the date of purchase/lease of the 1998 or 1999 Cadillac

DeVille, the purchase/lease price of the vehicle, the date the vehicle was repaired or sold and the mileage on the vehicle when it was repaired or sold. This information can be used to determine eligibility of class members to participate in any recovery. Under the guidance of a special master appointed by the Court, this information can be input into a damage model (like the one proposed by Plaintiffs) approved by the Court to determine the award to each claimant.

## IV.  CLASS CERTIFICATION UNDER RULE 23

To attain certification of the proposed class, Plaintiffs must meet each of the four requirements of Rule 23(a): numerosity, commonality, typicality and adequacy. *See* Fed. R. Civ. P. 23(a). Because Plaintiffs seek to certify the class under Rule 23(b)(3), they must also show that common issues predominate and that class treatment is the superior method to resolve the dispute. *See* Fed. R. Civ. P. 23(b)(3).

Plaintiffs bear the burden of proof on class certification. *See* Castano v. Am. Tobacco Co., 84 F.3d 734, 740 (5th Cir. 1996). The District Court may certify a class only if a "rigorous analysis" convinces it that all conditions set out in Rule 23 are met. *Id.* In so doing, the Court must consider "how a trial on the merits would be conducted" if a class were certified. *Id.* A Court may look past the pleadings to determine if the requirements of Rule 23 have been met. *Id.*, at 744. This necessitates looking "beyond the pleadings . . . [to] understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Id.*; cf. Manual For Complex Litigation, § 30.11 (3rd ed. 1995).

---

[6] Plaintiffs note at this juncture that they anticipate re-urging their Motion for Summary Judgment regarding liability issues in this matter, thus, the liability phase of the trial may not be necessary depending on the ruling on said motion.

A.      PLAINTIFFS' CLASS SATISFIES THE RULE 23(a) REQUIREMENTS

1.      <u>Numerosity</u>

Plaintiffs need not allege the exact number or identity of class members; a good faith estimate is sufficient. <u>Newberg,</u> §3.05, at 3-25 (3rd ed. 1992). *See also*: <u>Rivera v. Wyeth-Ayerst Laboratories</u>, 197 F.R.D. 584, 588 (S.D. Tex. 2000); <u>Marcial v. Coronet Ins. Co.</u>, 880 F.2d 954, 957 (7th Cir. 1989); <u>Ashe v. Board of Elections</u>, 124 F.R.D. 45, 47 (E.D.N.Y. 1989); <u>Folsom v. Blum</u>, 87 F.R.D. 443 (S.D.N.Y. 1980).  There is no threshold size for a class action, and the issue of numerosity must be determined on a case by case basis.  *See* 7A CHARLES ALLEN WRIGHT, et al., <u>Federal Practice and Procedure</u> § 1762 (1986).  Although the number of members in a proposed class is not determinative of whether joinder is impracticable, it has been noted that any class consisting of more than forty members "should raise a presumption that joinder is impracticable."  <u>Mullen</u>, 186 F.3d at 624 (class of 100 – 150 members); citing <u>Newberg,</u> §3.05, at 3-25 (3rd ed. 1992).[7]  Finally, a Court may use common sense assumptions to determine impracticability. *See* <u>Moskowitz v. Lopp</u>, 128 F.R.D. 624, 628 (E.D. Pa. 1989).

In its Interrogatory Answers, GM admits there are over 200,000 affected vehicles.  Exhibit "B," *supra.*  GM is able to identify all members of the proposed class, as it has already done so for purposes of issuing its recall notices.  Sonye Depo., Exhibit "D," at pp. 36-40 and 59-61.  The numerosity requirement does not focus on simply the number of class members, but, rather, whether joinder is practical.  If there is difficulty or inconvenience in joining all members of the class, joinder is impractical.  <u>Mullen</u>, 186 F.3d at 624-625; <u>Watson v. Shell Oil Co.</u>, 979

---

[7] *See also*: <u>Zeidman v. J. Ray McDermott & Co.</u>, 651 F.2d 1030, 1038 (5th Cir. 1981); <u>Boykin v. Georgia-Pacific Corp.</u>, 706 F.2d 1384, 1386 (5th Cir. 1983) (finding that numerosity requirement would not be met by a class with 20 members but was met by a class with 317 members); <u>Musmeci v. Schwegmann Giant Supermarkets, et als</u>, No. 97-2757, 2000 U.S. Dist. 10497 (E.D. La. 2000) (finding that a class of 181 satisfies the numerosity requirement); <u>Rivera</u>, 197 F.R.D. at 589 ("In this case, potential class members number in the tens of thousands. Furthermore, the class contains members from across the nation. Thus, it is apparent that joinder would be impractical;" citing <u>Mullen</u>, *supra*).

F.2d 1014, 1022 (5th Cir. 1992), *appeal dismissed*, 53 F.3d 663 (5th Cir. 1994). A class of over 200,000 members dispersed across the nation is clearly so numerous as to render joinder of all members impracticable. There can be no legitimate dispute that Plaintiffs have satisfied the numerosity requirement.

### 2.   <u>Commonality</u>

Rule 23(a)(2) requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). This requirement is referred to as "commonality." The commonality prerequisite is "not high." <u>Bertulli v. Indep. Ass'n. of Continental Pilots</u>, 242 F.3d 290, 296-97 (5th Cir. 2001); citing, <u>Jenkins</u>, 782 F.2d at 472. *See also*: <u>Walsh v. Northrop Grumman</u>, 162 F.R.D. at 444. ("It is well established that the commonality requirement of Rule 23(a)(2) is given permissive application"). A question is common to the class if, "when answered as to one class member 'will affect all or a significant number of the putative class members.'" <u>Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.</u>, 202 F.R.D. 484, 490 (S.D. Tex. 2001); citing, <u>Forbush v. J.C. Penney Co.</u>, 994 F.2d 1101, 1106 (5th Cir. 1993); <u>Mullen</u>, 186 F.3d at 625; <u>Musmeci</u>, No. 97-2757, 2000 U.S. Dist. LEXIS 10497 at *8 (E.D. La. 2000).[8]

It is important to note at the outset of the commonality determination that the rule does not require that <u>all</u> questions of law <u>and</u> fact be common to the class, but only that <u>some</u> questions of law <u>or</u> fact be present, and that such questions of law or fact are shared by the members of the putative class. <u>Jenkins</u>, 782 F.2d at 472; <u>Watson</u>, 979 F.2d at 1022; <u>B3 Moore's Federal Practice</u>, §23.106-1 (2nd ed. Rev. 1990). Neither exact identity nor complete commonality of factual or legal issues is required. <u>Johnson v. American Credit Co. of Georgia</u>, 581 F.2d 526, 532 (5th Cir. 1978). A single issue, the resolution of which will affect all or a

---

[8] *See also*: <u>Blackie v. Barrack</u>, 524 F.2d 891, 902 (9th Cir. 1975) (plaintiffs need only demonstrate that there is some unifying thread among the class members).

substantial number of putative class members, will satisfy the commonality requirement. Lightbourn v. County of El Paso, 118 F.3d 421, 426 (5th Cir. 1997), *cert. denied*, 522 U.S. 1052, 118 S.Ct. 700, 139 L.Ed.2d 643 (1998); citing Forbush, 994 F.2d at 1106.   Further, when common issues of law exist, factual differences among the claims of class members are not fatal. Like v. Carter, 448 F.2d 798, 802 (8th Cir. 1971), *cert. denied*, 405 U.S. 1045 (1972).

Plaintiffs represent a putative class of Acquirers of 1998 or 1999 Cadillac DeVilles.

- Each of these vehicles was manufactured by GM.

- Each of these vehicles included as standard equipment two side impact air bags and two SISMs.

- Each of these vehicles has also been recalled for a defect in the SISMs contained therein.

- Acquirers were notified of the defect by GM through the same form letter issued in September 2000.

- For each vehicle, the defect existed since the time of manufacture.

- Each vehicle was also accompanied by the same written warranty from GM.

- Each vehicle was also covered by an implied warranty provided by law.

Based on these common facts, the Court can determine whether each Acquirer is entitled to recover from GM for benefit-of-the-bargain damages for its breach of the identical warranties provided to each Acquirer.

It would be a waste of judicial resources to require each of the class members to individually assert their breach of warranty claims against GM when there is a common defect in the class members' automobiles which gives rise to those claims.   In the instant matter, the Plaintiffs seek relief on behalf of themselves and the putative class members as a result of the exact same course of conduct - - GM having designed, manufactured, distributed, marketed and sold the 1998 and 1999 Cadillac Devilles with defective SISMs.

19

There are clearly questions of law and fact common to the <u>entire</u> class with respect to the warranties referenced above. Whether GM breached its written warranty by delivering vehicles containing defective SISMs at the time of sale, and then failing to repair or replace the SISMs within a reasonable time are issues that can be resolved on a class wide basis. Additionally, whether GM breached its implied warranty by delivering a defective vehicle which was not fit for its ordinary purpose is susceptible to class-wide treatment. Clearly, there is a unifying thread among all class members. The resolution of these breach of warranty issues will definitely affect all or a significant number of the putative class members.

By excluding personal injury claims, Plaintiffs are focusing solely on breach of implied and express warranty claims - - the benefit-of-the-bargain theory. A finding of GM's breach of either the implied or express warranty will apply to all class members.[9] Finally, Plaintiffs have alleged a single formula (which may contain several sub-formulae), for the determination of damages that can be used to mathematically calculate damages for each class member. *See* Report of Dennis Guiffre, Exhibit "L."

GM will, no doubt, raise the specter of individualized issues, such as privity, reliance, other defenses and damages. These issues and defenses will not defeat certification where the defendant's breach of a legal duty is common to every member of the class. <u>Newberg,</u> §4.26 (3rd ed. 1992); <u>State ex rel. Guste v. General Motors Corp.</u>, 370 So.2d 477, 489 (La. 1978); <u>Dumont v. Charles Schwab & Co.</u>, 95-2010 (La. App. 4th Cir. 2/29/96), 670 So.2d 548, 550-551; <u>Strawn v. Canuso</u>, 140 N.J. 43, 67 (1995); <u>In re:  School Asbestos Litigation</u>, 789 F.2d 996, 1010 (3rd Cir. 1986), *cert. denied*, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117, *and cert. denied*, 479 U.S. 915, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986).

---

[9] <u>Sandwich Chef of Texas, Inc.</u>, 202 F.R.D. at 490-491 (finding that ruling concerning defendant's participation in racketeering scheme would apply equally to all class members, satisfying commonality requirement).

Even in a case where fraud has been alleged (which it has not in this case), reliance is not an obstacle to certification when the fraud is based upon either a material omission or a series of uniform written misrepresentations.  *Newberg*, §4.26 (3rd ed. 1992); Hoxworth v. Blinder, Robinson, 980 F.2d 912, 924 (3rd Cir. 1992); Kramas v. Security Gas & Oil, 672 F.2d 766, 769 (9th Cir. 1982); Sharp v. Coopers & Lybrand, 649 F.2d 175, 188 (3rd Cir. 1981), *cert. denied*, 455 U.S. 938 (1982).  *See also*: Restatement, Contracts §479.  On the issue of damages, the individual variations in the extent or nature of damages for each class member will not defeat class certification where common issues predominate.  *Newberg*, §4.26 (3rd ed. 1992). *See also*: In re:  Asbestos School Litigation, 104 F.R.D. at 432; Jenkins, 782 F.2d at 473; Sterling, 855 F.2d at 1197.

Clearly, GM's breach of the express and implied warranties is common to each member of the class.  The defect is in one component of the subject vehicles, all of which were manufactured by the defendant.  Thus, whether GM has breached its warranties is a question of law that is not only common, but identical, as to each class member.  Given the existence of these common legal and factual issues, Plaintiffs have met their burden of establishing commonality.  *See* Fed. R. Civ. P. 23(a)(2).

### 3.   Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  This requirement is referred to as the requirement of "typicality."  Typicality exists when the claims of named and unnamed plaintiffs have a common source and rest upon the same legal and remedial theories.  The claims of Beverly Cole, Anita S. Perkins and Jewell P. Lowe are typical of the claims of the class.  *See* the affidavits of named Plaintiffs, attached as Exhibits "Q," "I," and "R."

"Like commonality, the test for typicality is not demanding." Mullen, 186 F.3d at 625; citing Lightbourn, 118 F. 3d at 426; Forbush, 994 F.2d at 1106; Musmeci, NO. 97-2757, 2000 U.S. Dist. LEXIS 10497, at *11. The typicality requirement focuses not on the class but, rather, on the required characteristics of the class representatives. Newberg, §3.13 (3rd ed. 1992).[10]

The typicality requirement is designed to insure that the interests of the class representatives are sufficiently aligned with those of the class as a whole and is satisfied when the class representatives' claims for relief arise from the same course of conduct that gives rise to the claims of the other class members and are based upon the same legal or remedial theories. Walsh, 162 F.R.D. at 445; Dura-Bilt v. Chase Manhattan, 89 F.R.D. 87, 99 (S.D.N.Y. 1981); In re Drexel Burnham Lambert, 960 F.2d 285, 291 (2nd Cir. 1992), cert. dismissed, 506 U.S. 1088 (1993); Newberg, §3.13 (3rd ed. 1992). The most prominent consideration is that there is an absence of adverse interests between the representative parties and other members of the class. In re: Catfish Antitrust Litigation, 826 F.Supp. 1019, 1034 (M.D. Miss. 1993); citing Fowler v. Birmingham News Co., 608 F.2d 1055, 1058-1059 (5th Cir. 1979).

GM will undoubtedly argue that the damages allegedly suffered by the class members will vary from those suffered by the class representatives and that this should preclude class certification. However, it is not necessary that the class representatives and the class members suffer precisely the same injury. It is well-settled that differences may exist, so long as there are common elements of fact or law between the claims of the named representatives and the class members. Walker v. Jim Dandy Co., 638 F.2d 1330, 1336 (5th Cir. 1981); Herbert v. Monsanto Co., 576 F.2d 77, 80 (5th Cir. 1978).

---

[10] See also: Lightbourn, 118 F.3d at 426; Flanagan v. Ahearn (In re Asbestos Litigation), 90 F.3d 963, 976 (5th Cir. 1996).

A strong similarity of legal theories among the class members and the class representatives will satisfy the requirement despite substantial factual differences. <u>Mullen</u>, 186 F.3d at 625 (class representatives claiming negligence against defendant satisfied typicality requirement, even though variety of illnesses could fall under damages of "respiratory illness"); <u>Eisen</u>, 391 F.2d at 562 (typicality satisfied although varying fact patterns in each transaction); <u>Jenkins</u>, 782 F.2d at 472-473 (typicality found where single "state of the art" defense applied to all class members, despite fact that factual circumstances surrounding asbestos-related injuries varied).[11]  Typicality does not require the claims of all class members to be identical.  <u>In re: Catfish Antitrust Litigation</u>, 826 F.Supp. at 1034-1035; <u>Kornberg v. Carnival Cruise Lines, Inc.</u>, 741 F.2d 1332, 1337 (11th Cir. 1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985); <u>Kennedy v. Tallant</u>, 710 F.2d 711, 717 (11th Cir. 1983).

In the instant matter, the facts giving rise to the claims asserted herein on behalf of the class representatives are exactly the same as those giving rise to the claims asserted on behalf of the putative class.  More specifically, GM designed, manufactured, distributed, marketed and sold 1998 and 1999 Cadillac Devilles with defective SISMs.  GM has failed and refused to repair or replace the defective modules within a reasonable time.

Plaintiffs have asserted claims on behalf of themselves and the putative class under theories of breach of express and implied warranties.  The class asserts a single cause of action; a breach of GM's contractual obligations relating to its manufacture of 1998 and 1999 Cadillac

---

[11] See generally: <u>7A Federal Practice and Procedures</u> §1764; <u>Lightbourn</u>, 118 F.3d at 426; <u>Senter v. General Motors Corp.</u>, 532 F.2d 511 (6th Cir. 1976), *cert. denied*, 429 U.S. 870 (1976); <u>Gonzalez v. Cassidy</u>, 474 F.2d 67, 71, n. 7 (5th Cir. 1973); <u>Vuyanich v. Republic Nat. Bank of Dallas</u>, 505 F.Supp. 224 (N.D. Tex. 1980) (typicality met even though representative's proof differed from proof presented on behalf of the class, for representative's unique claim can be severed from class issues at trial); <u>Inda v. United Air Lines, Inc.</u>, 83 F.R.D. 1 (D.C. Cal. 1979) (typicality found despite the fact that it would be necessary to determine the state of mind of each member of the class); <u>Sullivan v. Chase Investment Servs. of Boston, Inc.</u>, 79 F.R.D. 246 (D.C. Cal. 1978) (typicality satisfied in fraud action despite differences in emphasis in the claims of each representative plaintiff for they were sufficiently parallel to insure the vigorous and full presentation of all potential claims for relief).

DeVilles equipped with defective SISMs.  Because the vehicles contained defective SISMs at the time of delivery, Acquirers did not receive what they bargained for - - a side impact air bag system free from defects.  The Plaintiffs have asserted a claim to recover the difference between the value of the vehicles as promised (without defect) and the value as delivered.  These are the exact claims members of the putative class would reasonably be expected to raise under the aforementioned facts.  There exist no adverse interests between the representative parties and other members of the putative class.  Thus, the claims of the named and unnamed plaintiffs consist of the same legal and remedial theory.

While there may be varying degrees of damages amongst the named and unnamed plaintiffs, this does not preclude class certification.  The simple fact is that all of the 1998 and 1999 Cadillac DeVilles were manufactured by GM and all such vehicles owned and/or leased by both the named and the unnamed plaintiffs in this proceeding were equipped with defective SISMs.  Therefore, the named and unnamed plaintiffs' damages, while they may vary in degree, are the result of a single source; a defect in the 1998 and 1999 Cadillac DeVilles manufactured by GM.

Any attempt by GM to argue that the claims of the named representatives are not typical of all class members because named Plaintiffs all reside in Louisiana and/or because they all purchased (as opposed to leased) their vehicles is without merit.  As discussed later in this brief, there are no significant differences between Louisiana law on warranty (redhibition) and the Uniform Commercial Code provisions applicable in all other jurisdictions.  Similarly, lessees have all of the same warranty rights as purchasers pursuant to GM's written warranty and under applicable law.  Sonye Depo., Exhibit "D," at pp. 12-13 and 59-61.  Moreover, lessees and purchasers are treated similarly under Plaintiffs' proposed damage model.  In any event,

Plaintiffs have sought to amend their complaint to add, as an additional named plaintiff, a lessee from a UCC state.

The requirement of typicality is met, because the claims of the class representatives arise from a common source and rely on the same legal and remedial theories.

### 4.   Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy of representation requirement looks at both the class representatives and their counsel.  Jenkins, 782 F.2d at 472.  The adequacy of representation prerequisite is divided into two inquiries:  (1) whether the interests of the named plaintiffs differ from those of other class members; and (2) whether class counsel is qualified to serve the interests of the entire class.  Musmeci, No. 97-2757, 2000 U.S. Dist. LEXIS 10497, at *12.

The class representatives' interests must be aligned with, and not antagonistic to, unnamed class members.  Mullen, 186 F.3d at 625-26.  A sufficient alignment of interests exists when "all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class."  In re: Corrugated Container Antitrust Litigation, 643 F.2d 195, 208 (5th Cir. 1981), aff'd. following remand, 659 F.2d 1322 (5th Cir. 1981), cert. denied, 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294, and cert. denied, 456 U.S. 1012, 102 S.Ct. 2308, 73 L.Ed.2d 1309 (1982); Bertulli, 242 F.3d at 298 n.33 (adequacy was present when class representatives did not seek relief at the expense of unnamed class members).  Moreover, because this is a Rule 23(b)(3) class, dissatisfied class members can opt out of the class.  See Fed. R. Civ. P. 23(c)(2); Bertulli, 242 F.3d at 298; Jenkins, 782 F.2d at 472, n.5.

Plaintiffs are adequate representatives of the class because they are class members and their interests do not conflict with the interests of the other class members they seek to represent. As discussed in the prior section on Typicality, any differences between the Plaintiffs and the putative class members are irrelevant and/or insignificant.  Every Acquirer, including the named representatives, has a claim for benefit-of-the-bargain damages as a result of the breach of warranty by GM.  If any wish to assert additional claims against GM, they may opt-out pursuant to Rule 23(b)(3).

Plaintiffs will also vigorously pursue their claims and the claims of the putative class members.  This dedication to pursue the claims of themselves and the class members, and to avoid becoming antagonistic to the claims of the absent class members, was evidenced by the Plaintiffs' refusal to accept preferential treatment offered by GM in the very early stages of this litigation.

GM offered to repair the Plaintiffs' vehicles ahead of schedule under the ruse of a good faith offer to resolve this dispute.  However, GM's efforts were a thinly-veiled attempt to drive a wedge between the representatives (who would supposedly have had their defective vehicles repaired immediately) and the rest of the class (who had to wait at least six months before repairs could be made to their vehicles).  (See Plaintiffs' Motion for Order Authorizing Putative Class Representatives to Respond to Defendant's Purported Offer to Repair and Memorandum in Support filed on January 26, 2001, and Plaintiffs' Memorandum in Reply to GM's Opposition to Motion Regarding Purported Offer to Repair, filed on March 8, 2001.)  After discovery in this proceeding, Plaintiffs learned that the purported offer by GM to repair their vehicles ahead of schedule was nothing more than an offer to install SISMs in their vehicles that were no safer than the defective SISMs subject to the recall.  Plaintiffs, therefore, have demonstrated their intention

26

to "put up a genuine fight" for the benefit of the class and the interests of the class will be fairly and adequately protected by Plaintiffs and counsel. <u>Sandwich Chef of Texas, Inc.</u>, 202 F.R.D. at 493-494; *See also*: <u>Roper</u>, 578 F.2d at 1112.

Adequacy of representation concerns not only the adequacy of the Plaintiffs to represent the interests of the proposed class members, but also the adequacy of the Plaintiffs' counsel to effectively and completely represent the interests of the class representatives and the interests of the putative class. Plaintiffs have retained counsel competent and experienced in the prosecution of complex consumer and mass tort litigation, including both individual and class action lawsuits. Although the party seeking certification bears the burden of proving that all of the requirements of Rule 23(a) have been satisfied, the Court may take judicial notice of the competence of class counsel. <u>Berger v. Compaq Computer Corp.</u>, 257 F.3d 475, 481 (5th Cir. 2001). *See also*:  Report of Edward F. Sherman, Exhibit "P," at p. 5.

The competence and ability of class counsel is evidenced by the affidavits of the attorneys Plaintiffs have retained to represent them and the putative class in this matter, attached hereto as Exhibits "V," "W," "X" and "Y." The Plaintiffs' counsel, therefore, will provide more than adequate representation to the class representatives as well as the putative class members.

Beverly Cole, Anita S. Perkins and Jewell P. Lowe should be designated and appointed as the class representatives of the proposed class and counsel for the plaintiffs should be designated and appointed as counsel for the proposed class. The named plaintiffs have met their burden of demonstrating that they will fairly and adequately protect the interests of the proposed class. *See* Fed. R. Civ. P. 23(a)(4).

**B.      PLAINTIFFS' CLASS SATISFIES THE RULE 23(b)(3) REQUIREMENTS**

In addition to the Rule 23(a) requirements, the Plaintiffs must demonstrate that the putative class also meets the requirements of Rule 23(b)(3).  Rule 23(b)(3) provides that a class action may be maintained if the Rule 23(a) factors are met and "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The proper standard for determining that common questions of law or fact predominate is a pragmatic one, in keeping with the basic objectives of a class action.  7A WRIGHT, MILLER and KANE, Federal Practice and Procedure § 1778 (1995).  Such objectives include the desire to "conserve the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion." Califano v. Wamasaki, 442 U.S. 682, 701 (1979); Jenkins, 782 F.2d at 471; Sterling, 855 F.2d at 1196-1197.  In other words, the purpose is to "achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." McCastle v. Rollins Environmental Services of La., Inc., 456 So.2d 612, 616 (La. 1984); See also: Eisen v. Carlisle & Jaquelin, 391 F.2d 555, 560 (2nd Cir. 1968); ADVISORY COMMITTEE NOTES, Fed. R. Civ. P. 23 (1966).

Keeping with these objectives, the requirements should be liberally construed in favor of the class action procedure, and any doubts should be resolved in favor of maintaining class certification. Eisen, 391 F.2d at 563.[12]  As shown below, Plaintiffs respectfully submit that the

---

[12] *See also*:  In re: Lease Oil Antitrust Litigation, 186 F.R.D. at 419; Walsh, 162 F.R.D. at 444; In re: Potash Antitrust Litigation, 159 F.R.D. at 688-689; Cruz v. Robert Abbey, 778 F.Supp. 605, 612 (EDNY 1991); In re: South Central States Bakery Litigation, 86 F.R.D. at 423; McCastle, 456 So.2d at 620; Newberg, § 24.73 (3rd ed. 1992);

common issues of fact and law presented by this case predominate over any individual issues and that the class action procedure is superior to other available methods for the fair and efficient adjudication of this controversy.

### 1.   __Predominance__

As previously noted, Rule 23(b)(3) requires that "questions of law or fact common to members of the class predominate over any questions affecting only individual members . . ." Fed. R. Civ. P. 23(b)(3).   The predominance inquiry is "far more demanding" than the commonality requirement found in Rule 23(a) and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, 521 U.S. at 624, 117 S.Ct. at 2250, 2249.   In order to "predominate," the common issues must "constitute a significant part of the individual cases." Mullen, 186 F.3d at 626; citing, Jenkins, 782 F.2d at 472; In re: School Asbestos Litigation, 789 F.2d 996, 1010 (3rd Cir. 1986).   Predominance does not require all issues to be common to all parties. Jenkins, 782 F.2d at 472; Watson, 979 F.2d at 1022.   It does not require resolution of common issues to be dispositive of the controversy or even determinative of liability. In re: School Asbestos Litigation, 789 F.2d at 1010; Jenkins, 782 F.2d at 472-473.   Further, predominance is not determined by a comparison of the time needed to adjudicate common issues versus individual issues,[13] or the number of common issues versus the number of individual issues,[14] or of the importance of the common issues versus the importance of individual issues.[15] Newberg notes that:

Newberg, § 24.74 (2nd ed. 1985); 7A WRIGHT, MILLER and KANE, Federal Practice and Procedure, § 1780 (1995).
[13] Sommers v. Abraham Lincoln Fed. Sav. & Loan Assn., 66 F.R.D. 581 (E.D. Pa. 1975); Minnesota v. United States Steel Corp., 44 F.R.D. 559, 569 (D.C. Minn. 1968).
[14] Arthur Young & Co. v. United States Dist. Court, 549 F.2d 686 (9th Cir. 1977), cert. denied, 424 U.S. 829 (1977); Deutchman v. Beneficial Corp., 132 F.R.D. 359 (D.C. Del. 1990); Haywood v. Barnes, 109 F.R.D. 568 (E.D.N.C. 1986).
[15] Gullish v. United States, 78 F.R.D. 515 (W.D. Pa. 1978), appeal dismissed, 594 F.2d 855 (3rd Cir. 1979).

In finding that common questions do predominate over individual ones in particular cases, Courts have pointed to such issues that possess the common nucleus of fact for all related questions, have spoken of common issues as the central or overriding question, or have used similar articulations. One Court has construed this test as determining whether there is an essential common link among class members and the defendant for which the Court provides a remedy. Implicit in these articulations of satisfaction of the predominance test is the notion that adjudication of common issues in the particular suit has important and desirable advantages of judicial economy compared to all other issues, or when viewed by themselves. <u>Newberg,</u> § 4.25 (2nd ed. 1985).[16]

One of the most important issues to be considered under the predominance inquiry is the significance of any variations in applicable state laws upon the predominance and superiority requirements. In assessing the variations in applicable state laws under the predominance inquiry, the Court should "initially identify the substantive law issues which will control the outcome of the litigation." <u>State of Alabama v. Blue Bird Body Co.,</u> 573 F.2d 309, 315 (5th Cir. 1978). "This requirement is particularly important in the context of a proposed nationwide class action, where there may be differences in state law that defeat findings of predominance and superiority under Rule 23(b)(3)." <u>In re: Ford Motor Co. Bronco II Product Liability Litigation,</u> 177 F.R.D. 360, 368 (E.D. La. 1997); citing, <u>Castano v. Am. Tobacco Co.,</u> 84 F.3d 734 (5th Cir. 1996). Thus, those seeking to certify a nationwide class must "creditably demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles.'" <u>In re: Ford Motor Co. Bronco II Product Liability Litigation,</u> 177 F.R.D. at 368-369; citing, <u>Walrh v. Ford Motor Co.,</u> 807 F.2d 1000, 1017 (D.C. Cir. 1986), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 677 (1987).

---

[16] *See also:* <u>Bennett v. Gazel</u>, 325 F.Supp. 203, 218 (D.C. Md. 1971) (stating the fundamental question boils down to whether the group aspiring to class status is seeking to remedy a common grievance).

a.    **Choice of Laws Analysis**

In diversity cases, such as this one, the district court is obliged to use the choice-of-law

rules of the state in which the court sits.  Spence v. Glock, 227 F.3d 308, 311 (5th Cir. 2000);

citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85

L.Ed. 1477 (1941).  That being so, Plaintiffs examine Louisiana's choice-of-law rules.

There are two pertinent provisions of Louisiana law applicable to the choice-of-law

analysis in this case, Louisiana Civil Code Articles 3515 (Conflict of Laws, General Provisions)

and 3537 (Conflict of Laws, Conventional Obligations).  According to La. Civ. Code art. 3515,

an issue "having contacts with other states is governed by the state whose policies would be most

seriously impaired if its law were not applied to that issue." Id.  This is generally understood to

be the "objective" of the Louisiana choice-of-law process.  Id., Rev. Comment (b).  The state

whose policies would be most seriously impaired if its law were not applied to the issue is

determined by evaluating:

> [T]he strength and pertinence of the relevant policies of all involved states in light
> of: (1) the relationship of each state to the parties and the dispute; and (2) the
> policies and needs of the interstate and international systems, including the
> policies of upholding the justified expectations of parties and of minimizing the
> adverse consequences that might follow from subjecting a party to the law of
> more than one state.
> La. Civ. Code art. 3515

Article 3537 specifies the choice-of-law analysis to be followed when a contractual issue

is being examined.  Under Article 3537, the state whose law is to be applied is determined by

evaluating:

> [T]he strength and pertinence of the relevant policies of the involved states in the
> light of: (1) the pertinent contacts of each state to the parties and the transaction,
> including the place of negotiation, formation, and performance of the contract, the
> location of the object of the contract, and the place of domicile, habitual
> residence, or business of the parties; (2) the nature, type, and purpose of the
> contract; and (3) the policies referred to in Article 3515, as well as the policies of

31

facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
La. Civ. Code art. 3537

The determination of the appropriate law to use "should not be a mechanical, quantitative process, but should be based on an objective and impartial evaluation of the consequences of the choice-of-law decision on each of the involved states with a view towards accommodating their respective interests rather than selfishly promoting the interests of one state at the expense of the others." La. Civ. Code art. 3537, Rev. Comment (c)

With this framework in mind, Plaintiffs address the issues in this case. As mentioned, the Plaintiffs have limited their claims to (a) breach of express warranty, and (b) breach of implied warranty. Thus, the provisions of Civil Code Article 3537 apply, as the issues to be addressed arise out of contract. The issues must be examined separately.

(i)      **Express Warranty**

Under the first step of the analysis, Plaintiffs must identify which state's policies would be most seriously impaired were its substantive law not applied to the issues raised by Plaintiffs' express warranty claim. Plaintiffs' suggestion satisfies this step of the process, because they assert that the substantive law of the 51 jurisdictions concerning express warranty claims should be applied. The substantive law of the 51 jurisdictions concerning express warranty is virtually the same. *See*, Exhibit "Z" (Catalogue of states' laws on UCC provisions). Plaintiffs also attach as Exhibit "AA" hereto, *in globo*, excerpts from the Uniform Commercial Code Series showing any variations among state law concerning UCC §§2-313, 2-607 and 2-714 and 2A-519, pertaining to express warranty, notice and remedies (for purchasers and lessees), respectively. Hawkland, et al., Uniform Commercial Code Series, (1994 ed.) These excerpts clearly show no variations among the state law regarding the UCC provisions pertaining to express warranty,

notice and remedies as adopted by the state legislatures that would affect predominance in this case.

Professor Weintraub has examined the pertinent substantive law provisions under which the Plaintiffs pursue their express warranty claims and has confirmed that the provisions have been adopted by every state without any significant modification.   Specifically, Professor Weintraub states, "Among the 49 states and the District of Columbia that have enacted UCC 2-313(1)(a) and (b), there are no variations that affect this case."   *See*, Report of Russell J. Weintraub, at p. 4, a copy of which is attached hereto as Exhibit "B."[17]   He states that, "Louisiana law provides the same rights and remedies as the UCC . . ."   *Id.*, at p. 12.   Since the Plaintiffs are urging that each jurisdiction's substantive law regarding express warranty be applied to the claims of its citizens in this case, the "relevant policies of the involved states" will, by definition, not be "seriously impaired."   *See*, La. Civ. Code art. 3537. *See*:   Shaw, 91 F.Supp.2d at 956-957 (Plaintiffs' claims under warranty provisions of the UCC on behalf of nationwide class certified, finding that "the relevant warranty laws are essentially the same in every state . . ."); Allapattah Services, Inc. v. Exxon Corp., 188 F.R.D. 667, 671 (S.D. Fla. 1999) (multi-state class certified on UCC warranty claims, finding that "although some variance exists, it appears that the differences are minor and do not contravene the purpose, as stated by the drafters of the UCC.").

---

[17] Professor Weintraub is a professor of law and holder of the Powell Chair in Business and Commercial Law at the University of Texas law school, and a nationally recognized expert on the UCC.  Plaintiffs' counsel have studied the relevant UCC and Louisiana redhibition provisions and agree with the analysis discussed by Professor Weintraub in his report in support of their motion for class certification.  Plaintiffs hereby adopt and incorporate that analysis as if copied herein, *in extenso*.

It could be said that the state in which each subject vehicle was purchased or leased has contacts with the parties and the transaction.  Spence, 227 F.3d at 313-315 (finding Louisiana choice-of-law principles similar to those stated in the Restatement (Second) of Conflict of Laws and that, "In an economic loss case, [exception stating place of injury bears little relation to the particular issue] cannot be said to be true" . . . "the fact that the place of injury was the place of purchase points to all fifty-one jurisdictions.").  However, it also can not be disputed that buyers and lessees use the vehicles in the states in which they reside, which may or may not be the same state in which they purchased or leased the vehicle.  With regard to the issues involved in the express warranty claims, the state to which the warranty was directed, i.e. in which the repair is to be performed, has more important factual contacts than any other state.  In re: Ford Motor Company Ignition Switch Products Liability Litigation, 174 F.R.D. 332, 348 (D.N.J. 1997) ("Each plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws.").

Simply put, the state in which the vehicle is used by the owner or lessee, and in which the contract is to be performed, has more significant connection to the transaction and the parties. That state's interests would bear the most serious legal, social, economic and other consequences if its laws were not applied to the express warranty claim.

GM has admitted that its express warranty covers every vehicle it sells and "travels with the vehicle to subsequent owners." (Sonye Depo., Exhibit "D," at pp. 36-40 and 59-61.)  Also, the warranty itself, states, "This warranty . . . is provided to the original and any subsequent owners of the vehicle . . ."  See, Exhibits "E" and "F," at p. 6 (Warranty Books for 1998 and 1999).  Thus, clearly, GM envisioned that the place where the vehicles were to be used, where a

34

defect or other covered problem may occur, and where repairs under the warranty would be performed, would be the place with the most contacts to the warranty.

The nature, type and purpose of the express warranty also make the application of each state's law the proper choice. GM, through the express warranty, agreed to repair "any defect related to materials or workmanship occurring during the Warranty Period," and to do so within a "reasonable time." *See*, Exhibits "E" and "F," at pp. 6-7 (Warranty Books for 1998 and 1999). GM notified owners and lessees in each state that a defect exists in the subject vehicles, but that it could not begin to repair the defect for at least six months. *See*, Exhibit "A." (Notification Letter). Thus, the nature, type and purpose of the express warranty is to provide repair for "any defect" within a "reasonable time." That type of contract is clearly intended to be performed, and to be sued upon if not performed, in the state in which each subject vehicle is located.

Finally, the policies of each state in governing the enforcement of written warranties weighs in favor of the state in which the vehicle is located. It is reasonable to anticipate that each state would seek to protect its citizens from breaches of warranties affecting their vehicles.

### (ii)      **Implied Warranty**

The Plaintiffs assert that the analysis of the choice-of-law principles with regard to the implied warranty claims of the class is similar to the analysis for the express warranty claims. That discussion will not be repeated here, but is incorporated herein by reference. As can be seen from Professor Weintraub's report, the few variations among the state laws in the implied warranty provisions of the UCC (UCC §2-314 and §2-316) relevant to this case "are such that they do not affect the result." *See*, Report of Russell J. Weintraub, Exhibit "BB" at p. 2. This result is also borne out by the excerpts attached hereto from the Uniform Commercial Code Series, as Exhibit "AA."

35

Although Louisiana has not adopted the relevant UCC provisions, Louisiana's redhibition laws embody the same principles and purposes of the UCC.  (*Compare* La. Civ. Code Art. 2520 and 2475 *with* UCC §2-314).  *See also*: Report of Russell J. Weintraub, Exhibit "BB," at pp. 12-13.  Thus, there is not a significant difference between Louisiana's implied warranty law and the implied warranty law of the other jurisdictions.  Similarly, Louisiana has as many factual contacts with the parties and the transactions at issue and as many important policies at stake that would be seriously impaired were its law not applied to its citizens' claims.

      (iii)    **In the Alternative, the Law of Michigan Should Apply to the Claims of Class Members of Every State Other Than Louisiana, and a Louisiana Sub-Class Should be Governed by Louisiana Law**

Plaintiffs argue that, in the alternative, and only if this Court is not satisfied that the law of the 51 jurisdictions may be applied to the claims of the class members in this case, the law of Michigan should apply to the claims of the class members in all jurisdictions other than Louisiana, and that Louisiana law should apply to a sub-class of Louisiana residents.

Should the Court determine that application of the law from the 51 jurisdictions is inconsistent with the predominance requirement, application of one state's law to a nationwide (or multi-state) class is perfectly consistent with class action jurisprudence.  In re: Bridgestone/Firestone, Inc. Tires Products Liability Litigation, (S.D. Ind. 2001) 155 F.Supp.2d 1069, 1084. (In examining choice of law principles substantially similar to that of Louisiana, the Court considered "all acts of the parties touching the transaction in relation to the several states involved and [applied] as the law governing the transaction, the law of that state with which the facts are in most intimate contact;" citing Hubbard Mfg. Co., Inc. v. Greeson, 515 N.E.2d 1071, 1073 (Ind. 1987)).  The Court found that the states in which the two defendants' principal places of business were located "have the most intimate contact with the facts relevant to Plaintiffs'

breach of warranty claims . . ." *Id.* The Court further reasoned that there was no negotiation, in reality, between the parties regarding either the warranties or the replacement of the defective tires under the recall and found that the state where each plaintiff purchased the defendants' products, used defendants' products most regularly, or resided at the time of purchase or when the suit was filed was irrelevant. *Id.* Rather, "the facts in dispute all center in Tennessee and Michigan, where Defendants made and executed their decisions regarding both the formation of and alleged breach of any applicable warranties." *Id.*

Therefore, it would not be unreasonable to find, under Louisiana's choice-of-law principles, that the law of the state of Michigan (because it is the state in which all of the defendant's key activities which are at issue in this proceeding took place), should apply to the claims of the class members in this case. With regard to Louisiana residents, however, as the Court held in In re: Bridgestone/Firestone Tires Products Liability Litigation, 155 F.Supp.2d at 1084-1085, Michigan does not apply Louisiana's redhibition articles. *See also*: Garner, 194 F.R.D. at 602-603 (applying the law of the states where defendants conducted their operations to the claims of a nationwide class asserting express warranty claims under UCC § 2-313); Wershba v. Apple Computer, Inc., 91 Cal.App. 4th 224 (July 31, 2001) (certifying a national settlement class of consumers who purchased defective computers from the defendant and rejecting defense that differences in state laws precluded a finding of predominance); Clothesrigger, Inc. v. GTE Corp., 191 Ca.App.3d 605, 236 Cal. Rptr. 605 (1987). Thus, should this Court find that Michigan law should apply to the claims of class members, Plaintiffs assert that a sub-class of Louisiana residents should be formed and Louisiana law on redhibition should apply to those class members' claims in this matter.

Additionally, in <u>Microsoft Corporation v. Manning</u>, 914 S.W.2d 602 (Tex.App. 1995), the Court affirmed the certification of a nationwide class which proposed to apply Texas substantive law regarding breach of express and implied warranties to the entire class.  While stating that the trial court had deferred a choice-of-law decision, the Court found that,

> [T]he case is primarily a breach of warranty action in which the Plaintiffs contend that Microsoft sold a defective product, in violation of express and implied warranties, and then charged the Plaintiffs for correcting the defect.  This is not a novel theory.  The trial court is not imposing a novel Texas theory on claims that have no significant contact or significant aggregation of contacts to the state. *Id.*, at 616.

Further, the Court distinguished <u>Walsh v. Ford Motor Co.</u>, 807 F.2d 1000 (D.C. Cir. 1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 677 (1987) and held that, "Courts have held that applying the law of disparate jurisdictions when the laws are virtually identical does not rule out nationwide class certification." <u>Manning</u>, 914 S.W.2d, at 613; citing <u>In re: Asbestos School Litigation</u>, 104 F.R.D. at 434. *See also:* <u>Renaissance Cruises, Inc. v. Glassman</u>, 738 So.2d 436, 439 (Fla.App. 1999) (certifying a nationwide class of cruise travelers asserting deceptive trade practices claims and concluding Florida had sufficient contacts to the litigation to apply its law, and had a great interest in protecting people dealing with corporations doing business within, or or out of, Florida.)

In this case, GM's activities with regard to the manufacture, installation, production and design of the defective product occurred in Michigan.  If this Court were to agree with the analysis performed by Judge Barker in the Ford/Firestone case, that the place of performance of the warranty should be assigned little weight because the place of performance was either uncertain or unknown at the time of contracting, this Court could apply substantive laws of Michigan to the claims of the class members in this case and the application of the substantive laws of Louisiana to the sub-class of Louisiana citizens.

38

**b.     Variations in State Law Do Not Swamp Any Common Issues or Defeat Predominance**

The Plaintiffs allege that GM failed to deliver the automobile purchased, has delivered an automobile other than the one purchased, has breached the express and implied warranties of sale, has sold and delivered an automobile containing defects under the redhibition laws of the state of Louisiana and the comparable provisions of the Uniform Commercial Code, and/or has breached its contract or contracts with Plaintiffs and the class members, and such conduct has resulted in damage to Plaintiffs and the class members.  Plaintiffs seek a determination as to whether GM breached its contractual obligations including the warranty against vices and defects, the warranty of merchantability and/or all other express warranties and warranties implied by law.

Plaintiffs contend that, due to GM's breaches of its warranty obligations, Plaintiffs are entitled to the difference in value between what they were promised and what they received. Simply put, Plaintiffs allege that GM breached its warranties to them and the members of the class and that they did not get what they paid for.  Each Plaintiff and class member paid for and/or leased a 1998 or 1999 Cadillac DeVille with a highly touted added safety feature - - the side impact airbag system.  What they got was a Cadillac DeVille with a side impact airbag system that possessed "a defect [that] can cause the side impact airbags in your car to deploy unexpectedly, without a crash as you start your car or during normal driving." (underscoring supplied)  Exhibit "A" (Notification Letter).  To make matters worse, GM also advised the Plaintiffs and the class members that it could not begin to replace the defective components of the side impact airbag system for a minimum of six months from when it finally disclosed the defect. *Id.*

Considering that the Plaintiffs seek to certify a nationwide class, they herein "identify the substantive law issues which will control the outcome of the litigation." *See*: <u>State of Alabama</u>, 573 F.2d at 315.  Plaintiffs assert that the substantive law of the 51 jurisdictions (i.e., the 50 states and the District of Columbia) should control the outcome of this litigation.  Plaintiffs further show that such laws may be applied to the facts in this case without swamping any common issues or precluding predominance, because the variations among the substantive law in those jurisdictions relevant to the claims of the class in this case are not significant and would not affect the result.

### (i)   <u>The Substantive Law of the 51 Jurisdictions Can be Applied to the Plaintiffs' Claims</u>

Plaintiffs anticipate that GM will assert predominance is lacking due to the fact that the putative class members are from a variety of states, requiring application of different state laws with respect to the warranty claims.  This assertion is without merit.

As stated in the expert report of Professor Russell J. Weintraub, prepared on behalf of the Plaintiffs, "the few variations in the provisions of UCC Article 2 relevant to this case are such that they do not affect the result.  The law of Louisiana, which has not adopted UCC Article 2, does not differ from Article 2 in a manner that would affect the result."  Report of Russell J. Weintraub, Exhibit "BB," at p. 2.  In particular, the substantive laws that would apply to the claims in this proceeding are Louisiana's redhibition laws (La. Civ. Code art. 2520, *et. seq.*) and UCC Articles 2-313, 2-314, 2-316, 2-714(2) and 2A-519(4).  As stated by Professor Weintraub, each state (except for Louisiana) and the District of Columbia have adopted Article 2 of the UCC, including Articles 2-313, 2-314, 2-316, 2-714(2) and 2A-519(4).  Report of Russell J. Weintraub, Exhibit "BB," at 4-10.  For the Court's convenience, Plaintiffs have attached copies

from the other 49 states and the District of Columbia of the relevant UCC provisions. *See* Exhibit "Z."

The facts of this case are common to all members of the putative class. Plaintiffs seek relief on behalf of the entire class under breach of express and/or implied warranty theories. See Section IV(A)(2), *supra*. These common issues clearly constitute a significant part (if not all) of the individual cases and predominate over any individual issues. There is no doubt that resolution of the breach of warranty claims (written and implied) will significantly advance resolution of the underlying hundreds of thousands of claims that, because of their minimal size and difficulty in prosecution, may never otherwise be asserted.

Under Louisiana law, the warranty against redhibitory defects is generally set forth in La. Civ. Code art. 2520, *et. seq.* A defect is redhibitory when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. La. Civ. Code art. 2520. The seller (manufacturer) also warrants the absence of hidden defects (La. Civ. Code art. 2475), and that the thing sold is reasonably fit for its ordinary use (La. Civ. Code art. 2524).

As for the other jurisdictions, the UCC sets forth standards for express warranties. *See*: UCC §2-313. In essence, it provides that any promise made by the seller which relates to the goods creates an express warranty that the goods shall conform to that promise. *See*: UCC §2-313(5)(a). The UCC also sets forth standards for implied warranties. *See*: UCC §2-314 and 2-315. These implied warranties include a warranty that the goods are fit for the ordinary purposes for which such goods are used. (*See*: UCC §2-314(2)(c)); and an implied warranty that the goods shall be fit for the purpose for which they are purchased. (*See*: UCC §2-315(4)).

As is clearly shown by the catalogue of the laws of the 51 jurisdictions, attached hereto as Exhibit "Z," and the Weintraub Expert Report, all other 49 states and the District of Columbia have adopted the relevant UCC Article 2 provisions without significant variation, and Louisiana's redhibition laws do not differ from the relevant Article 2 provisions in a manner that would affect the result in this case. As will be discussed in more detail below, this Court can utilize the laws of the 51 jurisdictions to determine the outcome of this case, because the relevant laws of those jurisdictions are virtually the same. Neither complex jury instructions nor multiple separate trials will be required to try the common issues in this proceeding under the laws of the 51 jurisdictions.

This proceeding does not involve the type or amount of individual issues that have led some courts to find predominance lacking. In Amchem Products, Inc., *supra*, the Supreme Court found that common issues did not predominate where members of the putative class were exposed to asbestos-containing products from different sources over many different time periods. Some of the class members were asymptomatic while others had developed illnesses. Amchem Products, Inc., 521 U.S. at 622-625, 117 S.Ct. at 2249-2250. Although the proposed class members were also from a variety of states, there is significantly more variation in the laws among the states on tort and products liability issues than there is with regard to warranty.

This class action presents none of the problems the Supreme Court found in the putative class of persons exposed to asbestos-containing products from many different sources over many different time periods, with some class members developing illnesses and others not, and a need to apply a multitude of different legal standards. To the contrary, this class seeks relief relating to a single defect, arising from a single source - - the defective SISMs, in a product spanning two model years, designed, manufactured, distributed and sold by a single defendant, resulting in the

same economic impact on each class member.  Quite plainly, each class member, who was provided with the same written warranty, paid for a non-defective Cadillac DeVille and yet received a defective Cadillac DeVille, thereby suffering economic damage.  To make matters more simple, GM even admitted to the defect.  *See* Exhibits "A," "I," and "J." As the Supreme Court stated in <u>Amchem</u>, "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violation of the antitrust laws.  Even mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement." (internal citations omitted) <u>Amchem Products, Inc.</u>, 521 U.S. at 625, 117 S.Ct. at 2250.

The present case is much more along the lines of the nationwide class which was certified in <u>In re: School Asbestos Litigation</u>, 789 F.2d 996 (3rd Cir. 1986).  Even though <u>In re:  School Asbestos Litigation</u> involved asbestos, it was more simple than <u>Amchem</u>, because only economic damages (property damages) were sought.  The Court relied on the Fifth Circuit's ruling in <u>Jenkins</u>, *supra*, and found that the evidence in asbestos litigation had been largely redundant. *Id.*, at 1010.  Since this was a property damage only claim, the court easily found that the very presence of the asbestos caused the damage.  The Third Circuit held that, although there was diversity in applicable state law governing the nationwide class action, the

> [C]lass plaintiffs have undertaken an extensive analysis of the variances in products liability among the jurisdictions.  That review separates the law into four categories.  Even assuming additional permutations and combinations, plaintiffs have made a creditable showing, which apparently satisfied the district court that class certification does not present insuperable obstacles.
> <u>In re: School Asbestos Litigation</u>, 789 F.2d at 1010.

The Fifth Circuit recently cited the foregoing language and concluded that, "The able opinion in <u>School Asbestos</u> demonstrates what is required from a district court when variations in state law exist." <u>Castano</u>, 84 F.3d at 742.  Similarly, the variations among the laws of the 51

jurisdictions in the case at hand regarding implied and express warranties are not so significant as to create insuperable obstacles to class-wide treatment of the common issues of law and fact.

GM will undoubtedly rely upon a number of cases in which class certification has been denied in arguing that certification should be denied here as well.  [See, e.g., Castano v. Am. Tobacco Co., 84 F.3d 734 (5th Cir. 1996), In re: Ford Motor Company Vehicle Paint Litigation, 182 F.R.D. 214 (E.D. La. 1998), In re: Ford Motor Company Bronco II Product Liability Litigation, 177 F.R.D. 360 (E.D. La. 1997), In re: Airbag Products Liability Litigation, 7 F.Supp.2d 792 (E.D. La. 1998), In re: General Motors Type III Door Latch Litigation, 2001 WL 548755 (N.D. Ill. 2001), Chin v. Chrysler Corp., 182 F.R.D. 448 (D.N.J. 1998), In re: Ford Motor Company Ignition Switch Products Liability Litigation, 174 F.R.D. 332 (D.N.J. 1997), In re: Masonite Corporation Hardboard Siding Products Liability Litigation, 170 F.R.D. 417 (E.D. La. 1997), Barbarin v. General Motors Corp., 1993 WL 765821 (D.D.C. 1993), Bolin v. Sears Roebuck and Co., 231 F.3d 970 (5th Cir. 2000), Allison v. Citgo Petroleum Corp., 151 F.3d 402 (5th Cir. 1998) and Patterson v. Mobil Oil Corp., 241 F.3d 417 (5th Cir. 2001)].  Plaintiffs have thoroughly analyzed the laws of the 51 jurisdictions as well as the pertinent cases on class certification addressing similar issues and will show that there are no variations in state law which would preclude certification of this class.

The Fifth Circuit Court of Appeals and other federal courts have ruled that, although certain requirements must be met, a nationwide or multi-state class, such as the one at issue here, can appropriately be certified.  [See: e.g., In re: School Asbestos Litigation, 789 F.2d 996 (3rd Cir. 1986), cert. denied, 479 U.S. 852, 107 S.Ct. 192, 93 L.Ed.2d 117, and cert. denied, 479 U.S. 915, 107 S.Ct. 318, 931 L.Ed.2d 291 (1986); Coghlan v. Wellcraft Marine Corp., 240 F.3d 449 (5th Cir. 2001), Bertulli v. Ind. Ass'n of Continental Pilots, 242 F.3d 290 (5th Cir. 2001), Hanlon

v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998), Allapattah Services, Inc., v. Exxon Corp., 188 F.R.D. 667 (S.D. Fla. 1999), Shaw v. Toshiba America Information Systems, Inc., 91 F.Supp.2d 942 (E.D. Tex. 2000), Rivera v. Wyeth-Ayerst Laboratories, 197 F.R.D. 584 (S.D. Tex. 2000), Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co., 202 F.R.D. 484 (S.D. Tex. 2001), Garner v. Healy, 184 F.R.D. 598 (N.D. Ill. 1999), Deadwyler v. Volkswagon of American, Inc., 1986 WL 12567 (W.D.N.C. 1986), and In re:  Bridgestone/Firestone, Inc. Tires Products Liability Litigation, 155 F.Supp.2d 1069 (S.D. Ind. 2001)].

In addition, Plaintiffs will show that, based on Fifth Circuit Court of Appeals' and other federal cases, this case may properly be certified, although minor variations in the law and facts may exist.  [See:  e.g., Mullen v. Treasure Chest Casino, L.L.C., 196 F.3d 620 (5th Cir. 1999), Watson v. Shell Oil Co., 979 F.2d 1014 (5th Cir. 1992), vacated for rehearing en banc, 990 F.2d 805 (5th Cir. 1993), appeal dismissed, 53 F.3d 663 (5th Cir. 1994), Jenkins v. Raymark Industries, Inc., 782 F.2d 468 (5th Cir. 1986), Lightbourn v. County of El Paso, Texas, 118 F.3d 421 (5th Cir. 1997) and O'Sullivan v. Countrywide Home Loans, Inc., 202 F.R.D. 504 (S.D. Tex. 2001)].

In Castano, the plaintiffs sought to certify a sprawling class of all "nicotine-dependent persons in the United States" since 1943and multiple defendants concerning eight different causes of action, including several different tort claims to which issues such as causation, contributory negligence, prescription and other defenses would naturally be highly individualized, and covered a time period of over fifty years.  The plaintiffs sought compensatory and punitive damages as well as attorney's fees and equitable relief.  The threshold qualifier of the class definition - - whether each member was "nicotine dependent" - - was not objectively determinable and was subject to greatly individualized and speculative proof issues.

The Fifth Circuit found that the surveys provided by the plaintiffs of the variations in state law were inadequate because they failed to discuss, in any meaningful way, how the court could deal with those variations; the Consumer Fraud Survey simply quoted a few state court decisions that had certified state-wide class actions and the survey of punitive damages was limited to the defendants' home states. Castano, 84 F.3d at 743. The Castano court summed up its finding by stating "nothing in the record demonstrates that the court critically analyzed how variations in state law would affect predominance." Id.

The case at hand is burdened by none of those insurmountable, individualized factual and legal variations. This case involves the conduct of one defendant in manufacturing one defective component for two model years of one vehicle and the resulting breach of its implied and express warranties pertaining to that vehicle. Likewise, there are no individualized causation issues. Each plaintiff was injured when they purchased the defective vehicle and did not get what they paid for.

The instant case is more akin to Jenkins v. Raymark Industries, Inc., supra, than to Castano, supra. In Jenkins, the Fifth Circuit confirmed the District Court's certification of a nationwide class of persons suffering from asbestos-related injuries. Jenkins, 782 F.2d at 473. Despite the many variations in the class members' injuries, causation and other issues, the court found that the class could be certified to determine a single defense (the "state of the art" defense) common to each class member's claims, as well as the defendant's culpability for punitive damages purposes. Id., at 470-471 and 473.

Plaintiffs' claims are also very similar to those of the plaintiffs in Shaw v. Toshiba America Information Systems, Inc., supra. In Shaw, the plaintiffs alleged that Toshiba had designed, manufactured, distributed and sold faulty floppy-diskette controllers ("FDC's")

containing an allegedly defective microcode in its laptop computers and sought to certify a nationwide class of owners and lessees of such computers.  Shaw, *Id.,* at 945.  The Court, in certifying the nationwide settlement class, addressed the claim and found it to involve highly common issues of law and fact.  Specifically, the Court stated, "The alleged FDC boundary-error problem is the same in all the laptop or notebook computers manufactured by Toshiba," and that "[t]he affidavit of Professor White establishes that the available remedies for breach of warranty are essentially the same for all class members." *Id.,* at 955.

In analyzing the predominance issue, the Court found that "a single jury could decide whether Toshiba's laptops were defective and, if so, whether the defect entitled class members to any remedies," and that "assuming that the computers are flawed, [the class members'] injuries are concrete." Shaw, 91 F.Supp.2d at 956.  Such is the case with the claims of the Plaintiffs here - - they allege that the minute they purchased the defective vehicle, their injury was concrete, and a single jury can easily determine this issue.  *See also:*  In re: Bridgestone/Firestone Tires Products Liability Litigation, 155 F.Supp.2d at 1099 and 1101 ("plaintiff's cause of action for breach of implied warranty accrued at the time he or she purchased an [allegedly defective product] and there is no requirement that Plaintiffs demonstrate any injury to their person or property as a result of the breach, but only that they purchased an unmerchantable product," and "Inasmuch as U.C.C. §2-725(2) applies to express warranty claims as well as implied warranty claims . . . the same analysis applies to both claims.").

The instant case is similar to Shaw in another important way.  The plaintiffs in Shaw alleged breach of warranty under the provisions of the UCC, specifically, UCC §2-313.  This is the same UCC provision upon which the Plaintiffs in this case base their express warranty claims.  The Court in Shaw held,

47

Forty-nine states and the District of Columbia have enacted the Uniform Commercial Code §2-313 regarding express warranties. The states of Maine, Minnesota, Michigan, and South Carolina adopted minor variations in the language of §2-313, but those variations do not affect the warranty claims in this case. Louisiana did not adopt §2-313; but Louisiana state-law establishes the same warranty principles as §2-313.

Additionally, forty-nine states and the District of Columbia have enacted Uniform Commercial Code §2-719 regarding limitation of warranty remedies. The states of Alabama, California, Mississippi, Vermont, and Washington adopted minor variations in the language of §2-719, but those variations do not affect the warranty claims in this case. Louisiana did not adopt §2-719; but Louisiana state-law establishes the same warranty principles as §2-719.

Finally, a limitation of remedy to repair and replacement, such as that contained in the Toshiba warranties in this action, may be avoided under UCC §2-719 only if the remedy is unconscionable or fails of its essential purpose.
Shaw, 911 F.Supp.2d at 956-957.

A review of Professor Weintraub's report reveals the same analysis with regard to the express warranty claims of the Plaintiffs in this case. See, Report of Russell J. Weintraub Exhibit BB," at pp. 3-4 and 10-12. Professor Weintraub opines, as did Professor White in Shaw, that UCC §2-313 and §2-719 (as well as other relevant UCC provisions) have been adopted by the other 49 states and the District of Columbia without any significant variation. Id., at pp. 3-12.

The court in Shaw continued its analysis of predominance by comparing the claims of the plaintiffs to those of the plaintiffs in Mullen v. Treasure Chest Casino, L.L.C., 186 F.3d 620 (5th Cir. 1999). Specifically, the court held,

[T]he case now before the Court looks far more like Treasure Chest than Amchem or Castano. There are no latent injuries or personal injuries at issue. There are no choice-of-law problems. Everyone's loss flows from a single source - - the purchase of computers with allegedly defective FDC's. In fact, this case is an even better candidate for certification than Treasure Chest. Here, there are economic losses, not personal injury claims. Courts have been reluctant to certify personal injury classes but have consistently certified classes involving economic harms. Class certification in securities cases is practically routine. Here, there is

> only a single possible cause of the injuries - - the allegedly defective microcode in
> the FDC's.
> Shaw, 911 F.Supp.2d at 957-958.  (internal citations omitted)

The case at bar, like Shaw, involves only economic losses, not personal injury claims.  There are

also no latent injuries involved - - Plaintiffs here were injured when they purchased the defective

product.  Thus, this case, like Shaw, presents an even better candidate for certification than did

the certified class in Mullen.

Plaintiffs anticipate GM will also rely on In re:  Ford Motor Company Vehicle Paint

Litigation, 182 F.R.D. 214 (E.D. La. 1998) herein referred to as the "Paint Litigation" case".  This

decision is also easily distinguishable from the instant case.  In the Paint Litigation case, the

Court was faced with a claim for fraudulent concealment of an alleged defect (i.e., the lack of

primer) in Ford's paint process which caused the paint on the vehicles to peel.  But the plaintiffs'

expert conceded that "the environmental history to which a vehicle was exposed after it was

painted has a greater influence on peel propensity than the elimination of primer."  Id., at 220.

Ford did not admit a defect in its paint process in contrast to GM's admission in this case that the

side impact air bag systems in the subject vehicles are defective.  There was no common defect.

The alleged conduct of Ford lasted seven years, involving different models of vehicles, made of

different materials using different paint formulae and different paint processes.  The case at hand

suffers from none of the difficulties in certification with which the court in the Paint Litigation

case was faced.

The case of Allapattah Services, Inc. v. Exxon Corp., 188 F.R.D. 667 (S.D. Fla. 1999) is

particularly instructive with regard to whether this case should be certified.  In Allapattah

Services, Inc., the plaintiffs sought to certify a multi-state class of service station franchisees

alleging breach of contract and fraudulent concealment claims.  188 F.R.D. at 670.  The Court

certified the multi-state class despite Exxon's claims that statutes of limitations, releases, reliance, and burden of proof variations precluded such certification. Allapattah Services, Inc., 188 F.R.D. at 671.  At the outset, the court noted,

> As a threshold matter, the Court recognizes the policies and principles which underlie the Uniform Commercial Code (the "UCC").  Drafted under the joint sponsorship of the American Law Institute ("ALI") and the National Conference of Commissioners on Uniform State Laws, the purpose of the UCC, including Article 2 thereof, is to 'simplify, clarify and modernize the law governing commercial transactions' and 'to *make uniform the law among the various jurisdictions.*'  UCC §1-102(2) (emphasis added).  Except for Louisiana, all states have codified the pertinent sections of the UCC regarding the sale of goods. *See* Pennzoil Co. v. Federal Energy Regulatory Comm'n., 789 F.2d 1128, 1142 (5th Cir. 1986).  Although some variance exists, it appears that the differences are minor and do not contravene the purpose, as stated by the drafters of the UCC. Allapattah Services, Inc., 188 F.R.D. at 671. (emphasis added in original)

The court recognized that one-third of the jurisdictions involved required timely reliance, but, noted that "the essential issue is whether, under the circumstances of this class action, reliance on Exxon's purported deceit can be established on a class-wide basis.  Considering the circumstances, the Court concludes that it can." *Id.*, at 676.  The Court also recognized variations in state law regarding burden of proof, but reasoned "the discrepancy between the two standards of proof are amenable to the issue-structuring devices afforded by jury instructions and special verdict forms. *Id.*, at 679.  This is precisely what the Plaintiffs are suggesting here, with regard to the minor law differences in state law which may exist on privity and reliance.

As stated by Professor Weintraub, the minor variations among the states with regard to the pertinent Article 2 sections of the UCC do not preclude a finding of predominance.  Professor Weintraub recognizes that issues of privity and reliance exist with regard to express warranties under UCC §2-313.  However, he points out (and as the Court in Allapattah Services, Inc. found), the requirement of requisite elements, such as privity and reliance in a few states, will not overcome the predominance of the common issues of law and fact in a breach of contract

50

claim under the UCC.  *See*, Report of Russell J. Weintraub, Exhibit "BB," at pp. 5-9 (noting that

Florida, Georgia and Arizona require privity of contract for enforcement of express warranty and

there is a split of authority in Texas on the issue; but opining that all of these states will enforce a

warranty made directly from the manufacturer to a remote buyer, as is the case in the action at

bar.   Also, noting that UCC §2-313 requires, in order to create express warranty, that an

affirmation of fact or promise by the seller become "part of the basis of the bargain;" but,

concluding that, "In the case at bar, however, there is no doubt that every buyer of a DeVille,

was relying on the express warranty to repair any defect in material or workmanship in a

reasonable time.    This promise always accompanies the purchase or rental of a new

automobile.").

It would defy common sense to find that a purchaser of a vehicle does not rely on an

express "bumper-to-bumper" warranty in purchasing the vehicle. *See also*: In re:

Bridgestone/Firestone Tires Products Liability Litigation, The Certification Order, Exhibit "O,"

slip op. at pp. 47-48 (UCC §2-313 does not require a showing of reliance, rather, any affirmation

or promise made by the seller which relates to the goods and becomes part of the basis of the

bargain creates an express warranty, and, "Whether the consumer was aware of the terms of the

written warranty before the purchase or not, it was certainly part of the bargain, in that the

warranty was part of what the seller sold to the buyer.").

GM will also rely upon In re: Ford Motor Company Bronco II Product Liability

Litigation, 177 F.R.D. 360 (E.D. La. 1997), herein referred to as the "Bronco II case."  The

Bronco II case is similar to the Eastern District's decision in In re: Ford Motor Company Vehicle

Paint Litigation, *supra*. The plaintiffs alleged that the Bronco II had an unreasonable propensity

to roll over, however, the Bronco II's were "sold over seven years in varying configurations,

including two wheel drive and four wheel drive, different tire sizes, different wheel sizes, with variances in mechanical configuration and track width," all of which can affect the propensity to roll over. *Id.*, at 372-373. The Court denied certification. From a factual standpoint, the <u>Bronco II</u> case is easily distinguishable from the case at hand for the same reasons that the <u>Paint Litigation</u> case is distinguishable.

The Court also noted that the plaintiffs did not adequately address variations among the laws of the 51 jurisdictions regarding their contract and warranty claims, but instead suggested that the law of Michigan apply to their claims. <u>In re: Ford Motor Company Bronco II Product</u>, *Id.*, at 369. The Court rejected the plaintiffs' suggestion because they did not fully analyze the application of Michigan law under Louisiana's choice of law provisions. *Id.*, at 370-371. The Plaintiffs here have analyzed the appropriate law to apply to the class members' claims under the Louisiana choice of law provisions. That analysis provides the laws of the 51 jurisdictions are the most appropriate to apply. This conclusion is in accord with <u>Shaw</u>, *supra*, <u>Allapattah</u>, *supra*, <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011 (9th Cir. 1998), <u>Garner v. Healy</u>, 184 F.R.D. 598 (N.D. Ill. 1999); <u>Rivera v. Wyeth-Ayerst Laboratories</u>, 197 F.R.D. 584 (S.D. Tex. 2000), and <u>Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.</u>, 202 F.R.D. 484 (S.D. Tex. 2001).

Finally, the <u>Bronco II</u> Court criticized the plaintiffs' damages calculation method, which consisted of a suggested class-wide survey to determine the amount by which the class members believed their vehicles had diminished in value, to be "speculative at best and biased at worst." 177 F.R.D., 374. Here, the Plaintiffs' damage theory and method of calculation is (a) well-recognized (<u>Coghlan v. Wellcraft Marine Corp.</u>, 240 F.3d 449, 452 (5th Cir. 2001) (class action case in which the court held, "The benefit of the bargain measure of damages is neither novel nor exotic.")); (b) objective; and (c) susceptible of mathematical application class wide because of its

52

formulaic nature. *See*: Report of Dennis M. Giuffre, Exhibit "L;" In re: Bridgestone/Firestone Tires Products Liability Litigation, The Certification Order, Exhibit "O," slip op. at pp. 56-57, n.39 (in examining similar damage theory, the Court found that claim "will have to be on the basis of expert testimony that will demonstrate the amount per vehicle and/or Tire by which the price Defendants received exceeded the price they should have received, given the defects in the Explorers and Tires. This expert testimony will apply class-wide, and will not depend upon the amount each Plaintiff actually paid for the product.").

In Hanlon, *supra*, the Ninth Circuit affirmed the certification of a nationwide settlement class asserting claims including state law warranty claims. Hanlon, 150 F.3d at 1023. The Court stated:

> [A]lthough some class members may possess slightly differing remedies based on state statute or common law, the actions asserted by the class representatives are not sufficiently anomalous to deny class certification. On the contrary, to the extent distinct remedies exist, they are local variants of a generally homogenous collection of causes which include products liability, breaches of express and implied warranties, and 'lemon laws.' . . . Thus, the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims.
> Hanlon, 150 F.3d at 1022-1023.

In Garner, *supra*, the Court certified a nationwide class asserting breach of express warranty claims, among others, finding that the predominance requirement was met despite some variation in applicable state laws. Garner, 184 F.R.D. at 602-603. The Court distinguished tort class actions from warranty class actions in holding, "Unlike a mass tort case or a defective pharmaceutical device case, there are no 'subsidiary concepts' such as duty of care, foreseeability or medical/scientific causation lurking in the background here." *Id.*, at 602-603. Further, although the plaintiffs in Garner sought to apply the laws of only three states (the states in which the defendants conducted their operations) to the claims of the nationwide class, the

Court found that the variations in state law pointed out by the defendants "involve little more than whether or not individual reliance must be established." *Id.*, at 603, n. 6.[18]   Although finding that "there is no 'general common law' of warranty," the Court held it was "not convinced that the substantive differences in consumer fraud law and warranty law will predominate over the fundamental question of whether Defendants misrepresented their products as 'waxes' or 'protectants' to consumers." *Id.*, at 603.

In Rivera, *supra*, the Court certified a nationwide class of purchasers of a prescription drug alleging implied and express warranty claims and seeking only economic damages. Rivera, 197 F.R.D. at 588.   In dismissing defendant's assertions that reliance and variations among state law defeated predominance, the Court held, "Plaintiffs bring neither a fraud nor a negligence action.   Moreover, Defendants cite no case law demonstrating that there is significant variation among state breach of warranty and restitution laws." *Id.*, at 591.   Finally, with respect to varying damages, the Court held, "although what various Plaintiffs paid for Duract may differ, there is obviously no requirement that all class members have identical damages.   In this case for economic loss, damages are more readily ascertainable than many types of cases that have been certified as class actions." *Id.*, at 592.   (internal citations omitted)

In Sandwich Chef of Texas, Inc., *supra*, the Court certified a nationwide (45-state) class alleging RICO claims. Sandwich Chef of Texas, Inc., 202 F.R.D. at 504.   Although the plaintiffs alleged RICO claims, those claims were rooted in a determination of whether, under each state's law, the defendant had charged workers' compensation insurance rates in excess of the filed rate. *Id.*, at 495-496.   The Court found that the state law did not vary significantly; that "each

---

[18] Finally, the Court distinguished Walsh v. Ford Motor Co., 807 F.2d 1000 (D.C. Cir. 1986), stating that Walsh "limited its analysis to product liability claims and implied warranties.   The court did not consider express warranty claims from the standpoint of uniform allegations of fraud under the U.C.C. §2-313(1)(b)." Garner, 184 F.R.D. at 603.

jurisdiction implicated by Wall Street's complaint requires Defendants to file their rates and rating plans for workers' compensation coverage and adhere to them." *Id.*, at 495. Finally, the court concluded, "minor variations in state laws, e.g., numerical differences among state rates, do not prevent certification." *Id.*, at 497.

In addressing the defendants' claims that the reliance element acted to preclude predominance, the Court in <u>Sandwich Chef of Texas, Inc.</u> analyzed two other cases upon which GM will undoubtedly rely: <u>Patterson</u>, *supra*, and <u>Bolin</u>, *supra*. The Court's analysis is identical to that which Plaintiffs use here to distinguish <u>Patterson</u> and <u>Bolin</u>:

> The Fifth Circuit has overruled orders certifying (b)(3) classes in cases where the facts required individual proof of reliance that would 'defeat the economics ordinarily associated with the class action device.' <u>Patterson</u>, 241 F.3d at 419; *see also* <u>Bolin</u>, 231 F.3d at 978; <u>Castano</u>, 84 F.3d at 745. The proposed classes in <u>Castano</u>, <u>Bolin</u> and <u>Patterson</u> were unsuitable for certification due to the multiplicity of individual issues presented by each claimant.
>
> *     *     *
>
> <u>Bolin</u> involved 'holistic' certification of numerous claims for consequential losses incurred as a result of the defendant's alleged illegal collection practices, such as hiring attorneys to defend litigation brought by the defendant. <u>Bolin</u>, 231 F.3d at 978. In <u>Patterson</u>, to establish reliance 'each plaintiff would have to make an individual showing that she could have and would have sued Mobil, but did not do so because the asserted false statements led her to believe her suit to be barred by the workers' compensation regime.' <u>Patterson</u>, 241 F.3d at 419.
>
> Wall Street's invoice theory claim is simple in contrast to the claims pursued in <u>Patterson</u>, <u>Bolin</u> and <u>Castano</u>; moreover, its claim has not been directly addressed by the Fifth Circuit. Wall Street's claim concerns only direct, not consequential, economic injury for conduct that falls within RICO's statute of limitations. The injury to each class member is the same: an alleged overcharge resulting from an inflated invoice. . . Wall Street's invoice theory claim thus does not raise the many complicating factors that have defeated Rule 23(b)(3) certification in other cases.
> <u>Sandwich Chef of Texas, Inc.</u>, 202 F.R.D. at 499.

The case at issue is easily more analogous to <u>Hanlon</u>, <u>Garner</u>, <u>Rivera</u> and <u>Sandwich Chef of Texas, Inc.</u> than to <u>Castano</u>, <u>Bolin</u>, <u>Patterson</u>, the <u>Paint Litigation</u> or the <u>Bronco II</u> case. As in <u>Hanlon</u>, the Plaintiffs here allege one common source of liability - - the defective side impact air

bag system - - and one remedy calculation - - the benefit-of-the-bargain damages forumla.  Like the class in <u>Garner</u>, the Plaintiffs here assert that, although there is no 'general common law' of warranty, the differences in warranty law will not predominate over the fundamental question of whether GM manufactured and sold vehicles with a defective side impact air bag system, thus causing the class economic damage.  Similar to the claims in <u>Rivera</u>, Plaintiffs here assert that there is no significant variation among state breach of warranty and restitution laws under the UCC provisions, and that, damages for economic loss in this case, although they vary slightly, are readily ascertainable.  Finally, like the class in <u>Sandwich Chef of Texas, Inc.</u>, the claims of Plaintiffs here face no significant variations among state law and the injury to each class member is the same: an alleged economic loss resulting from delivery of a product other than the one purchased.

Likewise, for all of the reasons discussed in this section of the brief, the problems with class certification identified by the courts in <u>In re:   General Motors Type III Door Latch Litigation</u>, 2001 WL 548755 (N.D. Ill. 2001) (too much uncertainty as to whether door latches were defective), <u>Chin v. Chrysler Corp.</u>, 182 F.R.D. 448 (D.N.J. 1998) (five model/years of at least eight different models and two different brake systems asserting five causes of action under state law; privity, reliance and defense issues; and lack of extensive analysis of variations in state laws and reasonable trial plan), <u>Barbarin v. General Motors Corp.</u>, 1993 WL 765821 (D.D.C. 1993) (too many variables in determining whether brake system defective, including system design or construction, environmental conditions, neglected maintenance and/or driver error), <u>In re:  Masonite Corp. Hardboard Siding Products Liability Litigation</u>, 170 F.R.D. 417 (E.D. La. 1997) (too many variables to determine defect, such as different thickness, type, plant of manufacture, component materials and production processes concerning product, negligence of

installer, differing weather conditions, and lack of maintenance; difficulty of applying laws of 51

jurisdictions in determining "defectiveness" based upon theory of negligence, In re:  Ford Motor

Company Ignition Switch Productions Liability Litigation, 174 F.R.D. 332 (D.N.J. 1997)

(twenty-three million member class asserting five causes of action and involving 158 model

years of vehicles, was not certified; the plaintiffs failed to demonstrate a reasonable and suitable

plan for the trial, involving 50 state's laws) and In re:  Air Bag Products Liability Litigation,

7F.Supp.792 (E.D. La. 1998) (too much speculation as to whether product was defective for

purposes of products liability theory of recovery) are not present in the instant case.

### 2.   **Superiority**

The Court should consider the following factors in making its determination of whether

the class action format is superior under Rule 23(b)(3):

      (a)    the interest of members of the class in individually controlling the prosecution or defense of separate actions;

      (b)    the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

      (c)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

      (d)    the difficulties likely to be encountered in the management of a class action.
              Fed. R. Civ. P. 23(b)(3)(A)-(D).

In making this determination, the Court must consider variations in state law and must

also address how a trial on the merits would be conducted. Castano, 84 F.3d at 740.  "The most

compelling rationale for finding superiority in a class action [is] the existence of a negative value

suit." Castano, 84 F.3d at 748.  As shown by the report of Mr. Giuffre, the anticipated size of

each class member's recovery in this case is less than one thousand, five hundred dollars

($1,500.00).  Report of Dennis M. Giuffre, Exhibit "L," at p. 5.  Thus, this is clearly an instance

where, "the amounts at stake for individuals may be so small that separate suits would be impractical." Garner, 184 F.R.D. at 605; quoting Amchem Prods., Inc., 521 U.S. 591, 117 S.Ct. at 2246.

Although attorney's fees may be available to the class representatives in this matter, that fact does not defeat the superiority of the class action procedure.

> The cost of a suit is not measured in court costs and attorney's fees alone.  It includes the time and effort that must be asserted by each individual plaintiff in submitting to interviews, depositions, time off from work, time away from the family, etc.  Such time and effort further results in lost income which may exceed an individual plaintiff's potential recovery.
> O'Sullivan v. Countrywide Home Loans, Inc., 202 F.R.D. 504, 514 (S.D. Tex. 2001).

To defeat a finding of superiority, individual actions must be shown to be not only feasible, but also that individual class members have an interest sufficient to make individual actions desirable.  Bertulli v. Indep. Ass'n of Continental Pilots, 242 F.3d 290, 299 (5th Cir. 2001). Plaintiffs assert that, not only is the class action the superior method for adjudicating this controversy, but - - because of the small size of the claim of each class member and the cost and difficulty of litigating such a claim - - it is the only method.  See, Rivera, 197 F.R.D. at 592.

Plaintiffs argue that, if this case is not certified, especially in light of the overwhelming commonality of factual and legal issues, relief will be denied the class members.  To allow GM to contest the liability with every class member in a separate suit would in many cases give GM an unfair advantage that "would be almost equivalent to closing the door of justice to all small claimants," and that "this is what . . . the class suit practice was to prevent." Allapattah Services, Inc., 188 F.R.D. at 675; quoting Weeks v. Bareco Oil Co., 125 F.2d 84, 90 (7th Cir. 1941).

### a.      Individual Control over the Litigation

The interest of class members to control litigation individually matters mainly when absent class members have personal injury claims.  See Georgine v. Amchem Prods., Inc., 83

F.3d 610 (3rd Cir. 1996), *aff'd sub nom.* <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591 (1997). When, as in this case, only economic losses are at issue, the interest to personally control the litigation is small.  As long as the named Plaintiffs seek to maximize the recovery, little else matters.  Plaintiffs with large claims that wish to preserve control may opt out.  The interests of putative class members in individually controlling the prosecution of this litigation is minimal.

### b. & c.        Other Litigation and Concentration in this Forum

The second and third factors - - pendency of other litigation and the desirability of concentrating litigation in this forum - - also weigh in favor of certifying the proposed class in this case.  To the best of Plaintiffs' information, knowledge and belief, there are no other lawsuits pending against GM regarding the defective side impact air bag systems with the SISMs in the model year 1998 and 1999 Cadillac DeVilles.  Thus, there is no "other litigation" that would render certification of a nationwide class in this matter troublesome.  To the contrary, certification of this class on a nationwide basis would eliminate the need for, as well as the expense, time and effort that would be required to prosecute, other cases on the causes of action that are the subject of this suit.

Additionally, the litigation over the defective side impact air bag systems with the SISMs in the model year 1998 and 1999 Cadillac DeVilles should be concentrated in this forum. Louisiana has as much interest in the protection of its citizens as any other forum.  Also, the class representatives are all domiciled in Louisiana.[19] But, the most important reason to concentrate the litigation in this forum is Louisiana's redhibition laws.  The legal claim of the Plaintiffs, with respect to Louisiana residents, are based on Louisiana's redhibition laws.  Although the language of the redhibition laws differs somewhat from the UCC provisions, the substance, interpretation and application of the redhibition laws are virtually the same as the UCC provisions.  A

Louisiana court is in a far better position to determine whether the redhibition laws of the State of Louisiana are, in fact, comparable to the provisions of the Uniform Commercial Code.

This Court has also made several rulings in this matter to date, making it more familiar than any other forum with the facts, allegations, defenses and law involved in this proceeding. It would not serve judicial economy, at this juncture, to transfer this case to another forum.

> **d.     Manageability**

Finally, minor variations in state laws do not prevent certification and such minor variations will not inundate the Court in the instant case. Following the Plaintiffs' suggested Trial Plan should allow for the concise management of the litigation of the claims in this case. This is especially true, since, under either choice-of-law theory, the applicable law is (a) virtually the same in every state - - thus not requiring a multitude of mini-trials or overly complex jury instructions - - or (b) the law of Michigan, with a Louisiana residents' sub-class, in which case the laws of only two jurisdictions would need to be managed. Neither of these scenarios presents manageability issues that are insurmountable.

"Manageability is a practical problem, one with which a district court generally has a greater degree of expertise and familiarity than does an appellate court." In re: School Asbestos Litigation, 789 F.2d at 1011; citing Link v. Mercedes-Benz, Inc., 550 F.2d 860, 864 (3rd Cir. 1977). The District Court's determination of manageability is only reviewable for an abuse of discretion. Shumate & Co., Inc. v. NASD, 509 F.2d 147, 155 (5th Cir. 1975).

# V.     CONCLUSION

The Plaintiffs have supported a classic case for class certification under the requirements of Rules 23(a) and 23(b). The 200,000-plus member putative class easily meets the numerosity requirement. The common issues of law are simple, i.e., the breach of the express and implied

---

[19] The Plaintiffs' Second Amended Petition in this matter seeks to add an Ohio partnership as a class representative.

warranties provided to *each* putative class member.  The common issues of fact are equally as simple:  the presence of a defective air bag system (acknowledged by the defendant), in one model vehicle, manufactured by one defendant at one plant over a two year period.   Only economic loss damages are sought, so the more complicated tort theories which frequently defeat certification are not present.

The Plaintiffs are typical class representatives and have no conflicts with the putative class members.  The Plaintiffs are dedicated to fairly and adequately protecting the interests of the class and are represented by experienced and competent counsel.

The Plaintiffs' choice of laws analysis favors the application of the laws of each of the 51 jurisdictions.  (But, as an alternative, the laws of Michigan could be applied to all jurisdictions except Louisiana, for which a sub-class could be formed and still satisfy due process considerations.)  These laws can easily be applied, since the laws are virtually identical, and only breach of warranty claims have been made for economic loss.  The Plaintiffs have also proposed an economic model which can be applied class-wide.

The class action approach to this litigation is superior to individual claims, due to the fairly small amount of damages sought for each putative class member and individual control issues are minimal, if present at all.  There is no other known litigation pending against the defendant for this defect.  And this Court is in the best position to conclude that Louisiana's redhibition laws are virtually the same as the UCC provisions adjusted in the other jurisdictions. Due to the simplistic approach taken by the Plaintiffs in bringing these claims, manageability should not be an issue.

The Plaintiffs respectfully direct this Court to the Certification Order (Exhibit "O") In re: Bridgeline/Firestone Fire Products Liability Litigation, for an excellent analysis on certifying a nationwide class involving a vehicular defect.

The Plaintiffs respectfully submit that its amend Motion for Class Certification be granted as prayed for.

Respectfully submitted:

Mr. Bob F. Wright
Mr. James Parkerson Roy
Ms. Carla Perron
DOMENGEAUX, WRIGHT, ROY
  & EDWARDS
556 Jefferson Street, Suite 500
Lafayette, LA   70502

Mr. Donald G. Kelly
Mr. William Townsend, III
KELLY, TOWNSEND & THOMAS
137 St. Denis Street
P. O. Box 756
Natchitoches, LA  71458-0756

Mr. Walter C. Thompson, Jr.
Mr. James M. White, III
Mr. Charles Pisano
BARKLEY & THOMPSON, L.C.
1515 Poydras Street, Suite 2350
New Orleans, LA  70112

ROEDEL, PARSONS, KOCH, FROST,
  BALHOFF & McCOLLISTER
8440 Jefferson Highway, Suite 301
Baton Rouge, LA 70809
Telephone:  (225) 929-7033
Facsimile:  (225) 929-6942

By: _____

    J. Kenton Parsons
    Bar Roll No. 10377
    Luke F. Piontek
    Bar Roll No. 19979
    Terri M. Collins
    Bar Roll No. 18315

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Class Certification Brief Filed on Behalf of Plaintiffs has been sent to all parties in this Docket by depositing same, postage prepaid, with the United States Mail, through their counsel of record at their addresses reflected in the record.

Baton Rouge, Louisiana, this 11th day of January, 2001.

_____
Luke F. Piontek

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

I.    BACKGROUND .................................................................................................. 2

II.   THE CLASS ACTION ....................................................................................... 10

III.  PLAINTIFFS' PROPOSED CLASS AND PROPOSED TRIAL PLAN............................ 13

     A. PROPOSED CLASS................................................................................... 13

     B.  TRIAL PLAN FOR PROSECUTION OF THIS CLASS ............................................ 15

IV.  CLASS CERTIFICATION UNDER RULE 23................................................................. 16

     A. PLAINTIFFS' CLASS SATISFIES THE RULE 23(a) REQUIREMENTS................ 16

         1.  Numerosity.................................................................................... 17

         2.  Commonality.................................................................................. 18

         3.  Typicality ...................................................................................... 21

         4.  Adequacy ...................................................................................... 25

     B.  PLAINTIFFS' CLASS SATISFIES THE RULE 23(b)(3) REQUIREMENTS........... 27

         1.  Predominance.............................................................................. 29

             a.  Choice of Laws Analysis ........................................................ 31

                  (i)     Express Warranty .................................................. 32

                  (ii)    Implied Warranty .................................................. 35

                  (iii)   In the Alternative, the Law of Michigan Should Apply to the
Claims of Class Members of Every State Other Than Louisiana,
and a Louisiana Sub-Class Should be Governed by Louisiana Law.... 36

             b.  Variations in State Law Do Not Swamp Any Common Issues or
Defeat Predominance ........................................................... 39

                  (i)     The Substantive Law of the 51 Jurisdictions Can be Applied
to the Plaintiffs' Claims...................................... 40

         2.  Superiority.................................................................................... 57

             a.          Individual Control over the Litigation.................................. 58

             b. & c.  Other Litigation and Concentration in this Forum ............... 59

             d.          Manageability ....................................................................... 60

V.    CONCLUSION.................................................................................................. 60

CERTIFICATE................................................................................................................ 63

# TABLE OF AUTHORITIES

**Page**

**Cases**

Allapattah Services, Inc. v. Exxon Corp.,
    188 F.R.D. 667 (S.D. Fla. 1999) ........................................................................ 33, 45, 49, 50, 58

Allison v. Citgo Petroleum Corp.,
    151 F.3d 402 (5th Cir. 1998) ....................................................................................... 44

Amchem Prods., Inc. v. Windsor,
    521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ................ 12, 14, 29, 42, 43, 48, 58, 59

Arthur Young & Co. v. United States Dist. Court,
    549 F.2d 686 (9th Cir. 1977),
    *cert. denied*, 424 U.S. 829 (1977) ........................................................................... 29

Ashe v. Board of Elections,
    24 F.R.D. 45 (E.D.N.Y. 1989) ................................................................................... 17

Barbarin v. General Motors Corp.,
    1993 WL 765821 (D.D.C. 1993) .......................................................................... 44, 56

Bennett v. Gazel,
    325 F.Supp. 203 (D.C. Md. 1971) ............................................................................. 30

Berger v. Compaq Computer Corp.,
    257 F.3d 475 (5th Cir. 2001) ...................................................................................... 27

Bertulli v. Indep. Ass'n. of Continental Pilots,
    242 F.3d 290 (5th Cir. 2001) .......................................................................... 18, 25, 44, 58

Blackie v. Barrack,
    524 F.2d 891 (9th Cir. 1975) ...................................................................................... 18

Bolin v. Sears Roebuck and Co.,
    231 F.3d 970 (5th Cir. 2000) .................................................................................. 44, 55

Boykin v. Georgia-Pacific Corp.,
    706 F.2d 1384 (5th Cir. 1983) .................................................................................... 17

Brown v. Cameron-Brown,
    92 F.R.D. 32 (E.D. Va. 1981) .................................................................................... 13

Califano v. Wamasaki,
    442 U.S. 682 (1979)............................................................................................. 28

Caridad v. Metro-North,
    191 F.3d 283 (2nd Cir. 1999)............................................................................. 11

Castano v. Am. Tobacco Co.,
    84 F.3d 734 (5th Cir. 1996) ................................................ 12, 16, 30, 43, 44, 45, 46, 48, 55, 57

Chin v. Chrysler Corp.,
    182 F.R.D. 448 (D.N.J. 1998)....................................................................... 44, 56

Chisholm v. TranSouth,
    184 F.R.D. 556 (E.D. Va. 1999) ...................................................................... 13

Clothesrigger, Inc. v. GTE Corp.,
    191 Ca.App.3d 605, 236 Cal. Rptr. 605 (1987).............................................. 37

Coghlan v. Wellcraft Marine,
    240 F.3d 449 (5th Cir. 2001) ..................................................................... 8, 44, 52

Coleman v. Cannon Oil Co.,
    141 F.R.D. 516 (M.D. Ala. 1992)..................................................................... 13

Cruz v. Robert Abbey,
    778 F.Supp. 605 (E.D.N.Y. 1991) .............................................................. 11, 28

Deadwyler v. Volkswagon of American, Inc.,
    1986 WL 12567 (W.D.N.C. 1986) ................................................................... 45

Deposit Guaranty Nat'l. Bank v. Roper,
    445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed2d 427 (1980)................................... 11

Deutchman v. Beneficial Corp.,
    132 F.R.D. 359 (D.C. Del. 1990)..................................................................... 29

Dumont v. Charles Schwab & Co.,
    95-2010 (La. App. 4th Cir. 2/29/96), 670 So.2d 548 ...................................... 20

Dura-Bilt v. Chase Manhattan,
    89 F.R.D. 87 (S.D.N.Y. 1981)......................................................................... 22

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)............................... 11, 23, 28

Flanagan v. Ahearn (In re Asbestos Litigation),
    90 F.3d 963 (5th Cir. 1996) ............................................................................. 22

Folsom v. Blum,
    87 F.R.D. 443 (S.D.N.Y. 1980) ............................................................ 17

Forbush v. J.C. Penney Co.,
    994 F.2d 1101 (5th Cir. 1993) .................................................. 18, 19, 22

Garner v. Healy,
    184 F.R.D. 598 (N.D. Ill. 1999)............................ 37, 45, 52, 53, 54, 55, 58

Gonzalez v. Cassidy,
    474 F.2d 67 (5th Cir. 1973) ............................................................... 23

Gulf Oil v. Bernard,
    452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)............................... 10

Gullish v. United States,
    78 F.R.D. 515 (W.D. Pa. 1978),
    appeal dismissed, 594 F.2d 855 (3rd Cir. 1979) ...................................... 29

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir. 1998) ........................................... 45, 52, 53, 55

Haywood v. Barnes,
    109 F.R.D. 568 (E.D.N.C. 1986) .......................................................... 29

Herbert v. Monsanto Co.,
    576 F.2d 77 (5th Cir. 1978) ............................................................... 22

Hohmann v. Packard Instrument,
    399 F.2d 711 (7th Cir. 1968) ............................................................. 11

Hoxworth v. Blinder, Robinson,
    980 F.2d 912 (3rd Cir. 1992) ............................................................. 21

Hubbard Mfg. Co., Inc. v. Greeson,
    515 N.E.2d 1071 (Ind. 1987) .............................................................. 36

In re Drexel Burnham Lambert,
    960 F.2d 285 (2nd Cir. 1992),
    cert. dismissed, 506 U.S. 1088 (1993)................................................... 22

In re:  "Agent Orange" Products Liability Litigation,
    597 F.Supp. 740 (E.D.N.Y. 1984),
    aff'd, 818 F.2d 145 (2nd Cir. 1987),
    cert. denied, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988)........................ 11

In re:  Bridgestone/Firestone Tires Products Liability Litigation,
    IP 00-9373-C-B/S, MDL No. 1373, (S.D. In. 2001) .................. 10, 36, 37, 45, 47, 51, 53, 62

iv

In re:  Ford Motor Company Vehicle Paint Litigation,
    182 F.R.D. 214 (E.D. La. 1998) ........................................................... 44, 49, 51, 55

In re:  Masonite Corporation Hardboard Siding Products Liability Litigation,
    170 F.R.D. 417 (E.D. La. 1997) ....................................................................... 44, 56

In re:  Potash Anti-Trust Litigation,
    159 F.R.D. 682 (D. Minn. 1995) ................................................................. 11, 13, 28

In re:  School Asbestos Litigation,
    789 F.2d 996 (3rd Cir. 1986),
    *cert. denied*, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117,
    *and cert. denied*, 479 U.S. 915, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986)20, 21, 29, 38, 43, 44, 60

In re: Airbag Products Liability Litigation,
    7 F.Supp.2d 792 (E.D. La. 1998)..................................................................... 44, 57

In re: Catfish  Antitrust Litigation,
    826 F.Supp. 1019 (M.D. Miss. 1993) .................................................................. 22

In re: Corrugated Container Antitrust Litigation,
    643 F.2d 195 (5th Cir. 1981),
    *aff'd. following remand*, 659 F.2d 1322 (5th Cir. 1981), *cert. denied*, 456 U.S. 998, 102 S.Ct.
    2283, 73 L.Ed.2d 1294, and *cert. denied*, 456 U.S. 1012, 102 S.Ct. 2308, 73 L.Ed.2d 1309
    (1982)...................................................................................................................... 25

In re: Ford Motor Co. Bronco II Product Liability Litigation,
    177 F.R.D. 360 (E.D. La. 1997) ..................................................... 30, 44, 51, 52, 55

In re: Ford Motor Company Ignition Switch Products Liability Litigation,
    174 F.R.D. 332 (D.N.J. 1997)......................................................... 34, 44, 51, 52, 57

In re: General Motors Type III Door Latch Litigation,
    2001 WL 548755 (N.D. Ill. 2001) .................................................................. 44, 56

In re: Lease Oil Antitrust Litigation,
    186 F.R.D. 403 (S.D. Tex. 1999)....................................................................... 11, 28

In re: South Central States Bakery Litigation,
    86 F.R.D. 407 (M.D. La. 1980) ......................................................................... 11, 28

Inda v. United Air Lines, Inc.,
    83 F.R.D. 1 (D.C. Cal. 1979)................................................................................. 23

Jenkins v. Raymark Industries, Inc.,
    782 F.2d 468 (5th Cir. 1986) ................................................. 12, 18, 21, 23, 25, 28, 29, 43, 45, 46

Johnson v. American Credit Co. of Georgia,
    581 F.2d 526 (5th Cir. 1978) ................................................................. 18

Kahan v. Rosenstiel,
    424 F.2d 161 (3rd Cir. 1970) ................................................................. 11

Kennedy v. Tallant,
    710 F.2d 711 q(11th Cir. 1983) ............................................................. 23

Klaxon Co. v. Stentor Electric Mfg. Co., 3
    13 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) ................................ 31

Kornberg v. Carnival Cruise Lines, Inc.,
    741 F.2d 1332 (11th Cir. 1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379
    (1985);.................................................................................................. 23

Kramas v. Security Gas & Oil,
    672 F.2d 766 (9th Cir. 1982) ................................................................ 21

Lightbourn v. County of El Paso,
    118 F.3d 421 (5th Cir. 1997),
    *cert. denied*, 522 U.S. 1052, 118 S.Ct. 700, 139 L.Ed.2d 643 (1998) .................. 19, 22, 23, 45

Like v. Carter,
    448 F.2d 798 (8th Cir. 1971),
    *cert. denied*, 405 U.S. 1045 (1972) .......................................... 19, 22, 56

Link v. Mercedes-Benz, Inc.,
    550 F.2d 860 (3rd Cir. 1977) ............................................................... 60

Marcial v. Coronet Ins. Co.,
    880 F.2d 954 (7th Cir. 1989) ................................................................ 17

McCastle v. Rollins Environmental Services of La., Inc.,
    456 So.2d 612 (La. 1984) ....................................................................... 28

Microsoft Corporation v. Manning,
    914 S.W.2d 602 (Tex.App. 1995)............................................................ 38

Minnesota v. United States Steel Corp.,
    44 F.R.D. 559 (D.C. Minn. 1968)........................................................... 48

Montelongo v. Meese,
    803 F.2d 1341 (5th Cir. 1986) .............................................................. 12

Moskowitz v. Lopp,
    128 F.R.D. 624 (E.D. Pa. 1989)............................................................. 17

vi

Mullen v. Treasure Chest Casino, L.L.C.,
   186 F.3d 620 (5th Cir. 1999),
   *cert. denied*, 528 U.S. 1159, 120 S.Ct. 1169, 145 L.Ed.2d 1078 (2000)... 12, 17, 18, 22, 23, 25,
   29, 45, 48, 49

Musmeci v. Schwegmann Giant Supermarkets, et als,
   No. 97-2757, 2000 U.S. Dist. 10497 (E.D. La. 2000) .................................................. 18, 22, 25

Partain v. First National Bank of Montgomery,
   59 F.R.D. 56 (M.D. Ala. 1973) ............................................................................................. 13

Patterson v. Mobil Oil Corp.,
   241 F.3d 417 (5th Cir. 2001) ........................................................................................... 44, 55

Renaissance Cruises, Inc. v. Glassman,
   738 So.2d 436 (Fla.App. 1999)........................................................................................... 38

Rivera v. Wyeth-Ayerst Laboratories,
   197 F.R.D. 584 (S.D. Tex. 2000)............................................................ 17, 45, 52, 54, 55, 58

Roper  v. Consurve, Inc.,
   578 F.2d 1106 (5th Cir. 1978), *aff'd on other grounds, sub nom* ................................. 11, 13, 27

Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.,
   202 F.R.D. 484 (S.D. Tex. 2001)................................................. 18, 20, 27, 45, 52, 54, 55, 56

Sharif v. New York State Education Dept.,
   127 F.R.D. 84 (S.D.N.Y. 1989) ...................................................................................... 9, 11

Sharp v. Coopers & Lybrand,
   649 F.2d 175 (3rd Cir. 1981),
   *cert. denied*, 455 U.S. 938 (1982)...................................................................................... 21

Shaw v. Toshiba America Information Systems, Inc.,
   91 F.Supp.2d 942 (E.D. Tex. 2000)......................................... 13, 14, 33, 45, 46, 47, 48, 49, 52

Shumate & Co., Inc. v. NASD,
   509 F.2d 147 (5th Cir. 1975) .............................................................................................. 60

Sirota v. Solitron Devices,
   673 F.2d 566 (2nd Cir. 1982)............................................................................................... 12

Sommers v. Abraham Lincoln Fed. Sav. & Loan Assn.,
   6 F.R.D. 581 (E.D. Pa. 1975)............................................................................................. 29

Spence v. Glock,
   227 F.3d 308 (5th Cir. 2000) ......................................................................................... 31, 34

State ex rel. Guste v. General Motors Corp.,
    370 So.2d 477 (La. 1978) ................................................................ 20

State of Alabama v. Blue Bird Body Co.,
    573 F.2d 309 (5th Cir. 1978) ...................................................... 30, 40

Sterling v. Velsicol Chemicals,
    855 F.2d 1188 (6th Cir. 1988) ................................................ 11, 21, 28

Strawn v. Canuso,
    140 N.J. 43, 67 (1995) ................................................................... 20

Sullivan v. Chase Investment Servs. of Boston, Inc.,
    79 F.R.D. 246 (D.C. Cal. 1978)................................................... 45, 58

Vuyanich v. Republic Nat. Bank of Dallas,
    505 F.Supp. 224 (N.D. Tex. 1980) .............................................. 23

Walker v. Jim Dandy Co.,
    638 F.2d 1330 (5th Cir. 1981) ...................................................... 22

Walrh v. Ford Motor Co.,
    807 F.2d 1000 (D.C. Cir. 1986),
    cert. denied, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 677 (1987) ...................................... 30

Walsh v. Northrop Grumman,
    162 F.R.D. 440 (S.D.N.Y. 1995) .................................... 18, 22, 28, 38, 54

Watson v. Shell Oil Co.,
    979 F.2d 1014 (5th Cir. 1992),
    appeal dismissed, 53 F.3d 663 (5th Cir. 1994)........................ 17, 18, 29, 45

Weeks v. Bareco Oil Company,
    125 F.2d 84 (7th Cir. 1941) ...................................................... 11, 58

Wershba v. Apple Computer, Inc.,
    91 Cal.App. 4th 224 (July 31, 2001)........................................... 37

Windham v. American Brands,
    565 F.2d 59 (4th Cir. 1977),
    cert. denied, 435 U.S. 968 (1978)................................................. 12

Zeidman v. J. Ray McDermott & Co.,
    651 F.2d 1030 (5th Cir. 1981) ...................................................... 17

## Statutes

Fed. R. Civ. P. 23 (1966), ADVISORY COMMITTEE NOTES, ................................................. 28

Fed. R. Civ. P. 23(a) ................................................................................ 16, 18, 21, 25, 27

Fed. R. Civ. P. 23(b)(3)............................................................................. 16, 28, 29, 57

Fed. R. Civ. P. 23(c)(2)............................................................................................ 25

La. Civ. Code art. 2475 ............................................................................................ 41

La. Civ. Code art. 2520 ....................................................................................... 40, 41

La. Civ. Code art. 2524 ............................................................................................ 41

La. Civ. Code art. 3515 ............................................................................................ 31

La. Civ. Code art. 3537 ....................................................................................... 31, 33

## Other Authorities

7A CHARLES ALLEN WRIGHT, et al., <u>Federal Practice and Procedure</u> § 1762 (1986).......... 17

<u>7A Federal Practice and Procedures</u> §1764 .............................................................. 23

7A WRIGHT, MILLER and KANE, <u>Federal Practice and Procedure</u> § 1778 (1995) ................ 28

7A WRIGHT, MILLER and KANE, <u>Federal Practice and Procedure</u> § 1780 (1995) ................ 11

<u>B3 Moore's Federal Practice</u>, §23.106-1 (2nd ed. Rev. 1990)...................................... 18

Hawkland, et al., <u>Uniform Commercial Code Series</u>, (1994 ed.) ......................... 32, 35

<u>Manual for Complex Litigation</u>, (Third) § 30.14 (1995) ............................................. 13

<u>Manual For Complex Litigation</u>, § 30.11 (3rd ed. 1995)............................................ 16

<u>Newberg</u>, § 24.73 (3rd ed. 1992) .................................................................... 11, 28

<u>Newberg</u>, § 24.74 (2nd ed. 1985)................................................................... 11, 29

<u>Newberg</u>, § 4.25 (2nd ed. 1985)........................................................................ 30

<u>Newberg</u>, §3.05 (3rd ed. 1992) ......................................................................... 17

<u>Newberg</u>, §3.13 (3rd ed. 1992) ......................................................................... 22

<u>Newberg</u>, §4.26 (3rd ed. 1992) .................................................................... 20, 21

<u>Restatement</u>, Contracts §479 .............................................................................. 21

UCC Article §2-313(5)(a).................................................................................... 41

UCC Article §2-314(2)(c) ........................................................................................ 41

UCC Article §2-315(4) .......................................................................................... 41

UCC Article §2-725(2) .......................................................................................... 47

UCC Article 2-313 ................................................ 32, 33, 37, 40, 41, 47, 48, 50, 51, 54

UCC Article 2-314 ........................................................................... 35, 36, 40, 41

UCC Article 2-315 .............................................................................................. 41

UCC Article 2-316 ....................................................................................... 35, 40

UCC Article 2-714(2) ....................................................................................... 40

UCC Article 2A-519(4) ..................................................................................... 40

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

## NOTICE OF DOCUMENTS NOT FILED IN RECORD

CIVIL DOCKET NO. 01-0123

BEVERLY COLE, ET AL

    VS.

GENERAL MOTORS CORP

ATTACHMENTS TO CLASS CERTIFICATION BRIEF FILED ON BEHALF OF PLAINTIFFS

FILED ON 3/21/02

IN THE ABOVE CAPTIONED CASE HAVE BEEN PLACED IN *Three* ~~AN~~ ACCORDION FOLDERS.

_____
DEPUTY CLERK