RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE _8, 4, 03_
G.B.

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE–OPELOUSAS DIVISION**

| | |
|---|---|
| **BEVERLY COLE, ET AL** | **CIVIL ACTION 01-123** |
| **VERSUS** | **CHIEF JUDGE HAIK** |
| **GENERAL MOTORS CORPORATION** | **MAGISTRATE JUDGE METHVIN** |

*************************************************************************

<u>**RULING**</u>

Before the Court is a Motion to Certify Class Action (Docs. #7 and #73) filed by the

plaintiffs in the above captioned matter. After a thorough review of the matter and being fully

advised in the premises, the Motion is hereby **GRANTED** as follows:

This matter arises from alleged defective Air Bag Systems and Side Impact Sensing

Modules (SISM) contained in1998 and 1999 Cadillac Devilles which caused or could cause the

air bags to deploy during normal use without a crash. GM informed owners of the defect in

September 2000 and the potential for deployment of the air bags during normal use, but noted

that replacement parts were not available at that time. Replacement parts in sufficient quantities

were allegedly not available for a general recall until May 2001. This situation left the vehicle

owners and lessors with the option of not using their vehicles at all or risk injury to themselves

and others should the air bags erroneously deploy.

The plaintiffs in this matter asserted the following issues which they assert are common

to all potential class members: (1) whether GM breached its contractual or quasi contractual

obligations to the class, including the warranty against vices and defects, the warranty of

1

merchantability, and/or all express warranties and warranties implied by law, (2) whether the defective Side Impact Sensing Modules with which the 1998 and 1999 Cadillac Devilles are equipped diminish the usefulness of the vehicles, (3) whether the Side Impact Sensing Modules with which the 1998 and 1999 Cadillac Devilles are equipped are defective such that the plaintiffs have been deprived of the difference in value between what they were promised and what they received, (4) whether the 1998 and 1999 Cadillac Devilles equipped with the aforementioned side impact air bag system are fit for their intended use, and (5) whether restitution or, alternatively, reduction of the purchase and/or lease price, and other pecuniary and/or economic damages, under the redhibition laws of the State of Louisiana and/or the comparable provisions of the Uniform Commercial Code; punitive damages, if applicable; and/or attorney's fees are available to plaintiffs and the class members. (First Amended and Restated Class Action Complaint, filed 8/29/01).

The Court recognizes that the plaintiffs First Amended and Restated Complaint essentially dismissed the products liability, tort-based, claims contained in the original Class Action Complaint filed in the 15th Judicial District Court. Had they not done so, this Court would have dismissed those claims as the plaintiffs lack standing under *Rivera v. Wyeth-Ayerst Labs., 283 F.3d. 315 (5th Cir. 2002).* Consequently, this Court is left to focus on the contractual claims. Included in the contract-based claims asserted by plaintiffs are two types of breach of warranty claims: breach of express warranties and breach of implied warranties. In order to certify a class in this situation, the Court must determine if the remaining claims satisfy the elements of Rule 23 of the Federal Rules of Civil Procedure.

The first step in any inquiry, of course, is to determine if the plaintiffs have standing to

2

assert their suit. "Standing is an inherent prerequisite to the class certification inquiry." *Bertulli v. Independent Association of Cont'l Pilots, 242 F.3d. 290, 294 (5th Cir., 2001).* To establish standing: (1) the plaintiff must have "suffered an injury in fact", (2) "there must be a causal connection between the injury and the conduct complained of", and (3) "it must be likely...that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife, 504 U.S. 555 at 560-61, 112 S.Ct. 2130.* It is hereby held that the plaintiffs in this matter have standing to assert the remaining contract based claims. They have established the "invasion of a legally protected interest" which is "concrete and particularized" *Lujan, 504 U.S. at 560, 112 S.Ct. 2130.* Namely, they bargained for one thing–a vehicle with an air bag system that works properly–and they received another thing–a vehicle with an air bag system which had the potential to deploy without impact. Additionally, they claim the defendants breached their warranty of repair, another contract based theory. Finally, the plaintiffs argue the defendants breached implied warranties of merchantability upon which they had the right to rely. This is a concrete and particularized injury suffered by each potential class member. The injury is the devaluation of the vehicle(s) that resulted from these breaches. Clearly, there is a causal connection between the breaches of warranties and the devaluation of the vehicles. A favorable decision awarding plaintiffs the value of their depreciation would certainly redress the injury. Accordingly, it is held that the potential class members have standing to assert this matter and a justiciable case or controversy exists.

Moving onto the issue of class certification, Rule 23 specifically states various prerequisites which must be satisfied prior to certifying a class action. They are as follows: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of

law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Additionally, Rule 23(b) sets forth elements which must be satisfied in order for a class action to be maintained once the aforementioned prerequisites are met.

The first prerequisite to certifying a class action, as set forth in Federal Rule of Civil Procedure 23(a), is that of numerosity. In this matter, it is undisputed that there are over 200,000 potential members in the purported class. That is, individuals who acquired a 1998 or 1999 Cadillac Deville equipped with Side Impact Air Bag Systems and Side Impact Sensing Modules. This Court concludes that joinder of all members is impracticable based on the large number of individuals and entities involved. Thus, the first prerequisite is met.

Second, commonality must be explored. Namely, there must be questions of law or fact common to the class. As the plaintiffs remaining claims focus exclusively on warranty and contractual issues, the Court concludes that there are several issues common to all plaintiffs. These issues include the alleged breach of express and implied warranties/contract-based issues and the potentially diminished value of the vehicles due to the defective SEISM. The resolution of these issues will affect all class members, satisfying the commonality requirement.

The third requirement is that of typicality. That is, the claims of the representative parties are typical to the claims of the class. All of the potential class members herein are parties who acquired a 1998 or 1999 Cadillac Deville containing a potentially defective SEISM. The resulting claims brought by the representative parties are certainly typical of the absent members' claims, if not exhaustive of any potential claims arising from this situation. Thus, the element of

typicality has been satisfied.

Finally, the fourth prerequisite to a class action set forth by Rule 23 is that the "representative parties will fairly and adequately protect the interests of the class". This requirement applies to both the class representatives and the class counsel. This Court has already determined that the interests of the named plaintiffs are the same or substantially the same as all other potential class members. From this, the Court can logically conclude that the named plaintiffs will fairly protect the interests of the class as a whole. Although there was some argument with respect to adequacy as the result of Jewell P. Lowe, the mother of one class counsel member, being named as a class representative, the Court finds that this issue carries little weight. It is clear there are several other competent individuals and firms representing this class that have no relationship to this member. Additionally, the Court also finds that the naming of Anita S. Perkins, a part time paralegal with one member of the class counsel, is not a fatal issue as she is not employed as an attorney-employee with the firm. Beverly Cole, the final named class member, has no personal association with any class counsel. The Court finds that, although a close relationship exists between some named class members and some class counsel, this is not sufficient to defeat the adequacy of representation requirement. Additionally, the Court finds that the attorneys representing the class and serving its interests are both qualified and experienced.

As this Court finds the prerequisites contained in Rule 23(a) of the Federal Rules of Civil Procedure have been met, it shall turn its attention to the maintainability requirements contained in Rule 23(b). The plaintiffs in this matter seek to certify a class under Rule 23(b)(1) and 23(b)(3). Rule 23(b)(1) requires the Court to consider whether the prosecution of separate

actions would (a) create the risk of inconsistent or varied adjudications establishing incompatible standards of conduct for the opposing party or (b) result in individual adjudications which would be dispositive of the interests of other class members not party to the litigation or substantially impair or impede their ability to protect their interests. Rule 23(b)(3) directs the Court to consider whether the questions of law or fact common to the members of the class predominate over individual issues and whether a class action is the superior method of adjudication. Rule 23(b)(3) lists various factors which are relevant when exploring these final requirements. These factors include the interest of individual class members to control the prosecution or defense of separate actions; the nature and extent of any litigation by or against any class member involving the same controversy; the "desirability or undesirability" of concentrating the litigation in the chosen forum; and the difficulties likely to arise in the management of the class action.

Upon consideration of the claims presented in this matter, it is hereby held that the prosecution of separate actions would undoubtedly create the risk of inconsistent adjudications. It is most probable that separate actions, which are likely to be filed in virtually every state, would result in varying decisions, creating confusion and impairing the rights of parties not subject to a particular suit.

Finally, this Court finds that the individual issues at hand are predominated by the factual and legal issues and questions common to the class. All of the plaintiffs herein are asserting essentially the same claim. Namely, they have been damaged because of allegedly defective SISMs installed in their vehicles and that this potential defect/breach of warranty decreased the value of their vehicles. The damages are based on a "benefit of the bargain" theory in that the

claimants seek to recover an amount equal to the loss in the vehicles damage due to the potential for a defect in the airbag system. Basically, they are claiming they did not receive the thing purchased. This is essentially the same claim that was set forth in *Coghlan v. Wellcraft Marine Corp., 240 F.3d. 449 (5th Cir, 2001)* wherein the Fifth Circuit Court of Appeals allowed the claims to stand finding they were different from "no injury" product liability suits in that they were "rooted in basic contract law rather than the law of product liability: the [plaintiffs] assert they were promised one thing, but were given a different, less valuable thing." In the instant case, the plaintiffs claim they contracted for a vehicle that did not have a potentially defective side airbag system, but instead received a vehicle with a side airbag system that had the potential to deploy inadvertently. Thus, they did not receive the vehicle for which they bargained. This is a breach of warranty claim which is traditionally a contract claim. Thus, the "benefit of the bargain" theory is properly applied.

The plaintiffs have proposed a damage model which takes into account several factors when determining each individual's damages. The defendant herein argues that the damage model set forth by the plaintiffs is flawed in various respects. Namely, that the plaintiff's expert, Dennis Guiffre, is not an automobile industry expert, that the damage model is unreliable because it fails to meet the standards set forth in *Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579* (1993) and *Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)*, and that various aspects of the model itself are flawed. The plaintiffs' have employed an economic expert with vast experience in the calculation of damages. The proposed model seeks to determine how much the vehicles in question have depreciated from the time of acquisition to the time of repair and, from that information, determine the factional amount of the depreciation that represents the

7

airbag system. From this, a damage figure is determined. Regardless of the item, a calculation of damages and value can be applied, so it is not necessary for the expert to be an automotive industry specialist. As this case has been narrowed down to the basic question of the devaluation of the vehicles due to the potentially defective air bag system, the Court feels confident the issue of damages can be adequately addressed through the proposed damage model, even if some modifications are needed.

After a thorough review of the plaintiffs' expert and the damage model involved, the Court finds that the requirements of Federal Rule of Evidence 702 have been met. The plaintiffs' expert has two masters degrees (economics and chemical engineering) and over twenty (20) years experience as an economist specializing in economic damages. He has been recognized as an expert in this field and has testified in numerous legal proceedings. His testimony and damage model are based on sufficient facts and data to address the issue(s) in this case; the damage model presents reliable principles and methods; and those methods and principles have been reliably applied to the facts of this case. The damage model at issue does not have to be perfect prior to the certification of a class. According to the United States Supreme Court in *Kumho*, the trial judge must "determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'" The testimony herein is reliable and the plaintiffs' expert is qualified to determine the economic damages which may be awarded should the plaintiffs prevail in this case. It should be noted that the economic expert testimony employed in this case is significantly different from the purely scientific testimony addressed in *Daubert* or the engineering testimony at issue in *Kuhmo*. In any event, this Court finds the requirements of Rule 702, as well as those addressed by the United States Supreme

8

Court in both *Daubert and Kuhmo,* have been met.

Finally, the Court will not specifically address all of the individual aspects of the damage model which the defendants argue are flawed because it is not necessary to do so at this juncture. As noted, the damage model presents a reliable basis for the calculation of damages. Through the normal course of this case, the parties will have the opportunity to argue their positions with respect to individual damage model issues. What is important at this time is that a model to calculate damages can exist and that damages can be calculated on a class wide basis without being predominated by individual issues. These findings are sufficient for the certification of a class and for meeting the maintainability requirements of Rule 23(b)(3). The fact that the damage model may be improved should not preclude the certification of a class in this matter because it has been determined that a uniform damage model can be applied to the class.

Potentially the most complicated issue which must be addressed prior to certification is the choice of law. Inherent in a determination of whether the maintainability requirements of Rule 23(b)(3) are met is knowing which law will apply and, according to the Fifth Circuit Court of Appeals, how "variations in state law affect predominance and superiority." *Castano v. American Tobacco Co., 84 F.3d. 734, 741 (5th Cir. 1996).* As the plaintiffs have invoked this Court's diversity jurisdiction, state substantive law would apply to the claims. Determining which state's laws should apply is the Court's responsibility. The plaintiffs in this matter ably analyzed Louisiana's choice of law requirements and determined that the laws of all 51 jurisdictions apply to this matter. The Court agrees with that determination. Article 3515 of the Louisiana Code of Civil Procedure states that the law of the state "whose policies would be most seriously impaired if its law were not applied to that issue is the state whose laws shall govern.

Pursuant to the statute, this state is determined by evaluating the "strength and pertinence of the relevant policies of all involved states in light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of the parties and of minimizing he adverse consequences tht might follow from subjecting a party to the law of more than one state." As it applies to contracts, the choice of law analysis required a court to explore "the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multi-state commercial intercourse, and of protecting one party from undue imposition by the other." *Louisiana Civil Code Article 3537.*

In applying these rules, the Court agrees with the plaintiffs and the Special Master that the logical conclusion is that the laws of the state where the vehicle is used by its owner or lessee and in where the contract of repair is to be performed, has the more significant connection to the matter. It would be that state whose interests would bear the most consequences were it laws not applied to the claims. The question this Court must consider is whether applying the laws of all 51 jurisdictions would make the class unmanageable or cause individual issues to overcome the common ones. In Louisiana, when a buyer purchases an item with a defect that diminishes its value so that the buyer would not have purchased the item or would have only purchased it at a lesser price, the warranty against redhibitory defects, as set forth in Louisiana Civil Code Article

2520, provides a means to redress the problem. Civil Code Article 2475 notes that the seller/manufacturer warrants against the presence of hidden defects and Article 2524 requires the thing sold to be reasonably fit for its intended use. Similarly, the Uniform Commercial Code (UCC), which virtually every other jurisdiction has enacted, provides that an implied warranty includes the assurance that goods are fit for both their intended purpose, as well as ordinary purposes for which they are used. *UCC Sections 2-314(2)(c) and 2-315(4)*. Section 2-313(5)(a) of the UCC applies to express warranties and provides that any promise made by a seller that relates to the goods sold creates an express warranty that the goods will conform to the promise.

Although these laws seem quite similar, the defendants have presented several issues and differences which must be addressed. The issue of express warranties will be addressed first. Specifically, GM argues that the breach of a promise to repair occurs at the time the defect is not repaired, not at the time of the sale. As noted by the Special Master, this case alleges that the defect in the automobiles at issue existed at the time of the sale and that, consequently, the plaintiffs did not receive the thing for which they bargained. Namely, a reliable side impact airbag system. Second, GM argues that differences in state laws requiring notice of the defect to the seller prior to suit being brought for breach of the warranty to repair. The purpose of this type of requirement is to put a seller on notice and allow them the opportunity to correct the situation prior to the filing of a lawsuit. This is demonstrated by GM's own prerequisite that states, "General Motors requires that you first provide us with written notification of any service difficulty you have experienced so that we have an opportunity to make any needed repairs before you are eligible for the remedies provided by these laws." To require the plaintiffs in this case to give GM notice so that GM has the opportunity to repair after the plaintiffs have received

11

notice of the problem and need for repair from GM is nonsensical. The application of technicalities without respect for their underlying purpose and which have absurd results has no place in a court of law. In this case, GM had complete knowledge of the problems with the SISMs when the recall notice, which advised buyers to wait for further notification, was published. Also at that time GM was aware of a number of complaints made to the National Highway Transportation and Safety Administration and of injuries that had been suffered. GM is in no way prejudiced by the filing of a law suit based on the alleged defects contained in the SISMs.

GM next asserts reliance arguments, questioning whether each potential class member relied on the express warranty. The cases cited by GM and the arguments set forth are not persuasive as applied to the particular set of circumstances presented in this case. The Fifth Circuit's decision in *McManus v. Fleetwood Enterprises, Inc, et al, 320 F.3d. 545 (5th Cir. 2003),* a case heavily briefed by the parties, is distinguishable from the case at hand. In that matter, the potential class members asserted breach of express and implied warranty claims based on the misrepresentation of the towing capacity of the vehicles involved. The vehicles' door tags stated they could tow 3,500 pounds, but failed to mention that supplemental brakes would be required to do so (although this language was apparently found at the end of a paper trail). The Fifth Circuit allowed the district court's certification decision to stand with respect to implied warranties, but found an abuse of discretion in certifying with respect to express warranties. The decision discussed Section 2.313 of the Texas Business and Commercial Code, which finds that an express warranty is created when a seller makes a representation or promise "which relates to the goods and becomes part of the basis of the bargain." The Court noted the split in authority as

12

to whether that language, taken from the UCC, dispenses with the common law requirement of reliance in express warranty claims. The Court went on to state that the "precise level of reliance required under Texas law to recover for breach of warranty is unclear" and found that the McManuses had failed to show that the representations made in their case "were part of the 'basis of the bargain' to such a uniform extent that the class certification is appropriate under Rule 23(b)(3) for the breach of express warranty claim.'"

The *McManus* decision is distinguishable in that the importance of towing capacity is truly a personal preference. For example, some individuals who bought the Fleetwood vehicles never intended to tow, were only towing items that could be safely moved without the addition of supplemental brakes, or had already had supplemental brakes. In other words, some purchasers would not be concerned about the towing capacity because they were not using that option on the vehicle. The misrepresented towing capacity did not affect every buyer and did not render every vehicle potentially dangerous. The vehicle could still be safely driven if the towing aspect was not being used, as was the case for many buyers. In the instant case, the plaintiffs had no choice. They did not have the option of not using the side impact air bag system. As the plaintiffs noted in their Supplemental Memorandum, "simply put, if you purchased one of these vehicles, it came with side impact air bags to which you were exposed every time you used your vehicle." *Plaintiffs' Supplemental Memorandum in Support of Class Certification, Pg. 5.* GM warranted that the side air bags would deploy only in the event of an impact to the vehicle and that any defect in the vehicle would be corrected within a reasonable time. It can be reasonably concluded that reliance on the basic safety of a vehicle, including the deployment of air bags only in the event of impact, and on a manufacturer to repair the defect in a reasonable period of time

13

are elements included in the basis of the bargain when purchasing a vehicle. If that were not so, it is highly unlikely that the automobile industry would be so successful. As such, this Court finds that the representations made to the potential class members' in this case are part of the basis of the bargain to a uniform extent sufficient to maintain class certification.

The defendant's final express warranty argument involves variances in state laws regarding the reasonableness of time to make repairs. There has been no evidence presented showing significant differences in state laws regarding what constitutes a reasonable time period. That is a jury question. GM argues that the portion of the written warranty in question applies only after the car is taken in for a needed repair. Specifically, that the owner must allow a reasonable time for the dealer to make the necessary repairs. The potential class members in this case were notified of the need for repairs and then required by GM to wait. Although the potential class members were then aware of the need for repairs and the potential danger, they would not have presented their cars to GM at that time because they had been notified that the parts required for the repair of the vehicles in question were not available. Taken to an extreme, the acceptance of this argument would mean that GM could notify consumers of dangerous defects in their vehicles, wait outrageously long periods of time to manufacture a safe replacement part, but not be held responsible for the consumer's loss as long as the individual dealership installed the part in a reasonable amount of time. To preclude class certification on this issue would be patently unfair.

GM also presented arguments with respect to the implied warranties. As noted by the Special Master, GM contends there are assorted differences among the states after an examination of cases on the subject, but fails to take into account that no two cases are factually

and legally identical. Additionally, it is important to note that numerous federal courts, as thoroughly briefed by the plaintiffs, have certified class actions involving breach of warranty and contract claims. Most of the cases cited by the parties on both sides can be distinguished on one point or another, but a view of their intent as a whole and the application of same to the particular factual scenario presented in this case, supports certification of this class. We have in this case a unique set of circumstances and the common issues of a large number of individuals predominate over the individual issues. That is precisely the type of situation class actions are intended to serve. Class actions do not require every single detail of every single claim to be identical in order for certification to be proper. This Court is required to examine the situation as a whole and determine that, if the essential elements of Rule 23 are met, would this matter be best tried as a class action and can it be managed as such. Some degree of common sense must go into this determination.

In the interest of thoroughness, however, the defendant's arguments regarding implied warranties will be addressed. The first argument revolves around privity. GM contends that some states prohibit the assertion of implied warranty claims for economic damages against remote manufacturers. Although our matter differs somewhat in that GM has acknowledged the existence of an implied warranty, the Court notes there may be some variations in the state laws with respect to this issue. That fact, however, does not defeat certification because those differences can be addressed through subclasses and the normal course of individual trials that take place in large litigations. Additionally, defense counsel is certainly experienced and capable enough to file the appropriate motions to address this type of issue. Second, GM claims that some states require a presumption of merchantability when a product has been in use for a certain

period of time without the manifestation of a defect. This case differs in that the potential defect, which was present when the cars were sold, was admitted in a publication issued by GM. GM's argument that this fact shouldn't be considered because the recall notice is not admissible as a remedial measure does not sway the Court. The individual issues do not predominate over the common issues with respect to this argument. Any variations in the laws involve very few states and can be easily addressed by the Court in the normal course of proceedings. Third, GM argues that state laws differ on merchantability standards. This argument is unpersuasive as we are focusing on the basic claim that the plaintiffs did not get what they bargained for in that they received an air bag system which would potentially deploy without an impact and did not receive repairs within a reasonable time period. The issues herein should not be construed as more difficult than they actually are.

GM's fourth argument is that used car purchasers are subject to a different merchantability standard than new car purchasers. Again, this issue does not sway the court as it can be addressed through sub-classes and the normal course of proceedings. It does not in any way present individual issues which would eclipse the common issues involved in this matter. The same holds true for the GM argument that some states allow limitations on implied warranties to coincide with those contained in written warranties. The Court agrees with the Special Master that the only question would be whether GM can limit the duration of its implied warranty to its express warranty. This is not an issue which should preclude class certification. GM's final argument pertaining to different tests used to determine a design defect. Although it is true that significant differences do exist, that is simply a red herring. GM admitted the problem at the center of this case in the notification letter. Differences in legal tests used to

determine defects have no bearing on this matter. All in all, it is clear that some variations in state laws on implied and express warranties exist. The fact remains that none of the issues presented are significant or relevant enough to defeat predominance. There is rarely, if ever, a class action where every single class member presents identical factual and legal scenarios. Some variations are expected and are commonly handled through subclasses.

Finally, the defendants presented statute of limitations arguments in an effort to defeat predominance. Both parties have agreed the Louisiana's one year prescriptive period for warranty claims would apply. In applying that statute, GM claims that any individual whose air bag deployed more than one year before the present suit was filed would be precluded from asserting a claim. However, as the plaintiffs argued, the law states that, "where a vendor is presumed to know of a defect, as in the case of a manufacturer or builder, and believes the defect has been corrected by his repair, prescription does not begin to run until the discovery of the reappearing defect." *McKneely v. Don Coleman Construction Co., 441 So.2d. 497, 499 (LA App., 2d Cir. 1983).* Additionally, the prescriptive period does not begin to run "until all attempts to repair the defect are abandoned by the seller, or until the last repair or promise to repair the defect are abandoned by the seller, or until the last repair or promise of repair is made by the seller to the buyer." *Ford Motor Credit Co. v. Bower, 589 So.2d. 571, 573 (LA App., 1st Cir. 1992).* In this case, the plaintiffs argue the claimants were told their vehicles had been repaired and GM did not correct this misstatement until September 2000. The Court agrees with the Special Master that prescription did not begin to run until September 2000, when the defect resurfaced, and the suit is timely. Consequently, the question of prescription does not raise individual issues.

17

Finally, Rule 23(b)(3) requires that a "class action be superior to other available methods for the fair and efficient adjudication of the controversy." In this case we have, as the plaintiffs noted, a large number of small valued claims. This is the type of situation ideally suited to class action treatment. GM's argument that the failure of the plaintiffs to provide a sufficient trial plan is unpersuasive as there is no requirement for a detailed litigation to be in place prior to certification of a class action. It is only necessary for the district court to appreciate the theories applicable to a case, not detail common management strategies prior to certification. See *Smith v. Texaco, 263 F.3d. 394 (5th Cir. 2001), withdrawn on other grounds.* GM also argues that there are no previous trials to warrant certification. But, as the Special Master noted, the low potential for individual recovery makes this fact unsurprising and, again, such suits are not required prior to certification. The time and expense it would take each individual to bring a separate claim would not warrant such action. GM next contends that the negative value of the claims is offset by the potential recovery of attorney's fees afforded by the statute. Again, the Court agrees with the Special Master's opinion that the negative value of each claim is a strong reason to certify the class because attorney's fees are not an absolute and, as stated, the personal effort required for an individual lawsuit would not be justified in this situation. The defendant's next argument against superiority is that the better avenue to address the damages is to make the necessary repairs. Although repairing the vehicles is certainly a wise action, it does not reflect the alleged devaluation of the vehicles or the breach of warranty to repair. Lastly, GM claims the National Highway Transportation and Safety Administration's voluntary recall process relieves it from liability. This is not the case because GM did not make a remedy readily available. Simply notifying customers of a defect, but failing to offer repairs within a reasonable time, if that is

established as a fact, is not sufficient to shield a manufacturer from liability. Based on the foregoing, this Court finds that a class action is the superior method for handling the matter at hand.

A thorough discussion of the multitudes of cases cited and how our unique case can be distinguished is not needed at this time. The parties have done an excellent job of briefing and it is not, based on the foregoing discussion, necessary to explore any further. This Court finds that this case is more similar to *Coghlan* than the other cases cited by the parties. Basically, the plaintiffs claim they bargained for one thing and were given a different, less valuable thing. Like *Coghlan*, the claims herein are not rooted in the alleged defect itself, but on the benefit of the bargain. Additionally, this case looks to the reasonableness of the defendant in curing the problem and whether it breached its contractual obligations. As previously stated, the claims remaining in this matter should not be construed to be any more complicated than they actually are. This matter is well suited for class action treatment and the variances noted by the defendants in state laws can be handled by the Court and the parties through the use of subclasses and common management strategies. To require the large number of potential class members herein to bring individual actions for these precise and common claims would be inefficient and unfair.

With that, and after a thorough review of the arguments pertaining to the Class Definition, it is held that the definition is as follows:

> **All persons and legal entities who have acquired, whether by purchase, lease, donation or otherwise ("Acquirers"), anywhere in the United States, 1998 or 1999 Cadillac Devilles**

equipped with side impact air bag systems and side impact

sensing modules ("Vehicle"). *EXCLUDED* from the class are

all Acquirers who sustained bodily injury or death as a result

of the unexpected or premature deployment of a side impact

air bag; all persons who executed, before October 26, 2000, a

release in favor of General Motors Corporation ("GM"), on

account of an unexpected or premature deployment of a side

impact air bag; commercial lessors and dealers; any Acquirer

who acquired a Vehicle after the date of the voluntary recall;

any Acquirer who acquired a Vehicle after the SISM/ side

impact air bag system had been repaired; counsel for GM; and

counsel for plaintiffs and the class.

In conclusion, it is hereby found that the plaintiffs/potential class members herein have

standing to assert their breach of warranty claims against the defendant. The prerequisite

elements contained in Rule 23(a) and the maintainability requirements in Rule 23(b) have been

satisfied. The class definition set forth above adequately encompasses the affected individuals

and the circumstances embodied in this case. Although the defendants presented worthy

arguments, they were not weighty enough to overcome the fact that the plaintiffs have carried

their burden for certification. The issues are simple and common to all parties and the variance

in state laws can be handled through the common methods employed in large litigations. The

measure of damages will not vary in any significant way from individual to individual as the

focus of the claims is based on a benefit of the bargain and the reasonableness of repair, not on

the alleged defect itself. As stated throughout this Ruling, this case is ideally suited to class

action treatment.

THUS DONE AND SIGNED on this the _____ 3 ²ⁿᵈ _____ day of _August_ , 2005.

RICHARD T. HAIK, SR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA